Argued November 27, 1972, affirmed February 12, petition for
rehearing denied March 22, petition for review denied
May 15, 1973

CROFT, *Respondent, v.* GULF & WESTERN
INDUSTRIES, INC. ET AL, *Defendants,* OREGON
STATE HIGHWAY COMMISSION, *Appellant.*

506 P2d 541

508

*Edward II. Warren,* Portland, argued the cause for appellant. With him on the briefs were Hershiser, Mitchell & Warren, Portland.

*Marvin S. Nepom,* Portland, argued the cause for respondent. With him on the brief was Lester L. Rawls, Portland.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

THORNTON, J.

Plaintiff brought this action under the Oregon Tort Claims Act[①] against defendant Oregon State Highway Commission and others to recover damages for personal injuries received in a two-car collision allegedly caused by faulty electric traffic control signals.

Trial was had before a jury which returned a verdict against defendant Oregon State Highway Commission and in favor of plaintiff in the amount of $50,000. A judgment was entered on such verdict. Defendant Commission appeals.

---

① ORS 30.260 to 30.300.

Defendant Gulf & Western Industries, Inc., manufacturers of the signals, and defendant Don E. Seawood, operator of the other car involved, were allowed judgments of involuntary nonsuit and are not parties in this appeal.

Three questions are presented on appeal:

I. Did plaintiff comply with ORS 30.275 in presenting his claim?

II. Was any substantial evidence produced on trial from which the jury could reasonably determine that the defendant knew or should have known that the signal malfunctioned?

III. Was any substantial evidence produced on trial from which the jury could reasonably determine that defendant was negligent in failing to properly repair the traffic control signal at the intersection after receiving complaints prior to May 26, 1969, that the signal malfunctioned?

The essential facts are as follows:

State Road 217 and Highway 99W intersect at approximately right angles on the easterly side of the city of Tigard, Washington County, Oregon. The intersection is controlled by five three-phase, green, red and amber electrically operated traffic control signals.

On May 26, 1969, at approximately 6:24 a.m., plaintiff was operating his vehicle in a southerly direction on State Road 217 on his way to work. Defendant Seawood was operating his vehicle in a westerly direction on Highway 99W at the place where the two thoroughfares intersect. A collision occurred within the intersection from which accident plaintiff sustained his claimed injuries.

Plaintiff was hospitalized on May 26, 1969, and remained hospitalized until his discharge on July 13, 1969.

Clayton D. Brown, a Tigard police officer, arrived at the scene of the accident at 6:27 a.m. Shortly after the officer arrived a bystander called the officer's attention to the malfunctioning of the traffic control signals at the intersection—they were showing "green" simultaneously from two conflicting directions.

At the scene of the accident both plaintiff and defendant Seawood claimed to have had the green light.

Officer Brown remained at the accident scene approximately 45 minutes and observed between 12 to 14 cycles of the light, during which time the functioning was erratic. However before he left the scene the lights spontaneously commenced to function properly. He testified that on two previous occasions he had observed malfunctioning of the lights and reported the malfunctions. On one occasion he reported the condition to the State Police. On the second occasion he reported it to the State Highway Department. The first of the two occasions occurred in late winter of 1968, the other in the early months of 1969, prior to the May 26 accident.

Officer Brown testified that in his observation the signal malfunctioned when the conditions were wet or damp. The two reported previous malfunctions did not, however, involve "green" in two different directions; they were either "out or locked up in one condition."

The signal lights in question were purchased from the Eagle Signal Company and installed on

January 17, 1967. Defendant Commission had the responsibility to repair and maintain the signals at the intersection. The evidence was that defendant followed a regular program of inspecting each signal on a six-months' basis. The usual procedure for signal maintenance of either relays or controllers is a visual inspection. If the inspection discloses a problem, the parts are removed and replaced at the scene. The electrician for defendant carried with him three separate tools, voltmeter, ammeter and ohmmeter, some of them combined in one meter. He made a visual inspection of the light on the several occasions he was called to make repairs prior to the accident, replaced a relay, but did not use the instruments available to him to make a check of the signal.

The record of maintenance at this intersection revealed that frequent straightening of the signals was required due to high wind at the intersection. When a complaint was received that a light was out at an intersection the normal procedure was to change the relay, which was accomplished by removing the old and plugging the new one into an electrical panel like a part on a television set.

On May 26, 1969, after the accident, a visual inspection of the box in which the relays are housed failed to reveal any moisture in the box. The lights were functioning properly when the defendant's personnel arrived at 7:30 a.m. Replacement was made of one of the relays, inasmuch as it was slightly discolored. This change was made as a precautionary measure.

On July 28, 1969, plaintiff's attorney addressed a letter to L. W. Rulien, the regional engineer for the State Highway Department, advising that plaintiff

had been injured on May 26, 1969, as the result of an accident allegedly caused by a defective traffic control signal at the named intersection. Plaintiff's attorney directed another letter to Mr. Rulien on September 10, which was acknowledged by a reply on September 11, and a request for information concerning the signal forwarded to G. E. Rohde, Chief Counsel for the State Highway Department.[2] On September 15, Mr. Rohde acknowledged the letter of September 10 and indicated that the matter was being forwarded to the insurer for the State Highway Department. There was no evidence to show that the State Highway Commission or any member thereof received notice of the claim.

## I

Did plaintiff's letter to Mr. Rulien, dated July 28, constitute written notice of plaintiff's claim to the State Highway Department?

Defendant contends that plaintiff failed to prove that proper statutory notice was given as provided in ORS 30.275 (1).

ORS 30.275, as of the date of the accident,[3] provided as follows:

"(1) Every person who claims damages from a public body for or on account of any loss or injury within the scope of ORS 30.260 to 30.300 shall cause to be presented to the governing body of the public body within 45 days after the alleged loss or injury

---

[2] The designation "State Highway Department" was changed to "Highway Division of the Department of Transportation" by Oregon Laws 1969, ch 599, § 15, p 1350 (ORS 366.105).

[3] ORS 30.275 was subsequently amended by, among other things, deleting the words "governing body of the" from the statute. This amendment was made effective June 11, 1969, which was after the accident but before the notice was given to Mr. Rulien.

a written notice stating the time, place and circumstances thereof, and the amount of compensation or other relief demanded. Failure to state the amount of compensation or other relief demanded does not invalidate the notice; but, in such case, the claimant shall furnish full information regarding the nature and extent of the injuries and damages within 30 days after written demand by the public body.

"* * * * *"

■■ It will be noted that the above provision does not require that the notice be presented to the governing body but rather that the claimant shall cause it to be presented to that body. Secondly, under the Tort Claims Act a claimant, by submitting his claim, is not seeking to establish personal liability against the individual members of the governing body of the public agency, but against the public agency itself. ORS 30.275.

The regional engineer testified he was in charge of construction and maintenance activities of the department in his region, including the operation of the allegedly defective signals. There was evidence that plaintiff's letter was forwarded through channels to the chief counsel of the defendant Commission and its maintenance engineer in Salem.

■ It is our conclusion that plaintiff's letter dated July 28, 1969, to Mr. Rulien, together with Mr. Rulien's action in reporting the letter to the chief counsel of the department and the maintenance engineer in Salem, constituted substantial compliance with the provisions of ORS 30.275 (1) which were in effect on the date of the accident.

Jurisdictions which have taken a similar liberal view in favor of the claimant in interpreting compar-

able notice provisions of various tort claims statutes include Indiana,[④] Texas,[⑤] and California.[⑥]

We recognize that appellate courts of at least two jurisdictions have taken a stricter view of similar notice provisions.[⑦] However, we believe that our interpretation is more consistent with the intent of the legislature in enacting this remedial statute. The purpose of our Tort Claims Act is to permit injured citizens to obtain reimbursement for damages suffered as a result of torts of public bodies. The purpose of the notice provision (ORS 30.275) is simply to give the public body timely notice of the tort, and allow its officers an opportunity to investigate the matter promptly and ascertain all the necessary facts. As the court observed in *Galbreath v. City of Indpls.*, 253 Ind 472, 479-80, 255 NE2d 225, 229 (1970):

> "* * * [W]e see no need to endorse a policy which renders the statute a trap for the unwary *where such purpose* [of the notice provision] *has in fact been satisfied * * *.*"

Moreover, a liberal interpretation of ORS 30.275 is in harmony with the rationale of *Stroh v. State Accident Ins. Fund,* 261 Or 117, 492 P2d 472 (1972). In *Stroh* our Supreme Court held that a workmen's compensation claimant's notice of claim sent by ordinary mail

---

[④] Galbreath v. City of Indpls., 253 Ind 472, 255 NE2d 225 (1970).

[⑤] Penny v. City of Texarkana, 400 SW2d 797 (Tex Civ App 1966).

[⑥] Peters v. City & County of San Francisco, 41 Cal2d 419, 260 P2d 55 (1953). *See also,* Stone v. District of Columbia, 237 F2d 28, *cert denied* 352 US 934 (DC Cir 1956); Cooper v. Westchester County, 42 F Supp 1 (DC NY 1941).

[⑦] *See,* McGuire v. Hennessy, 292 Minn 429, 193 NW2d 313 (1971); Long v. City of Knoxville, 467 SW2d 309, 310-11 (Tenn App 1970).

rather than registered mail as required by statute was sufficient when the evidence established that the notice was actually received as in this case.

We find nothing in *Fry v. Willamalane Park & Rec. Dist.*, 4 Or App 575, 481 P2d 648 (1971), relied upon by defendant to defeat the notice here, that requires a contrary result in the case at bar. Plaintiff Fry failed to give any notice whatever to the public body or its officers or agents within the time fixed by ORS 30.275. Instead Fry relied on having given notice, not to the public body, but to an agent of the park district's liability insurance carrier. *Fry* is therefore distinguishable.

## II

■ Was any substantial evidence produced on trial from which the jury could reasonably determine that the defendant knew or should have known that the signal malfunctioned?

We conclude that there was sufficient evidence.

Officer Brown testified as follows: that he arrived at the scene only a few minutes after the collision; that it was raining at the time and had been raining over the night; that he observed the erratic functioning of from 12 to 14 cycles of the traffic signal lights; that he had observed and reported to the State Highway Department and the State Police on two prior occasions that the traffic lights were malfunctioning; that "[e]very time it rained, or it got damp, the lights malfunctioned, whenever it got wet."

We do not agree with defendant that plaintiff was required to prove that defendant had prior knowledge of the particular combination of light se-

quence malfunctions which allegedly occurred at the time of, and caused, the accident. Reasonable prior notice that the signals were malfunctioning is sufficient. Here there was adequate evidence from which the jury could find that defendant knew or should have known that the lights in question were malfunctioning.

■ Because of the extreme danger to the traveling public which results if automatic traffic control signals malfunction, a high degree of care should be required of the public body whose responsibility it is to maintain such signals. *McDaniel v. Welsh,* 234 So 2d 833 (La App 1970).

## III

■ Was any substantial evidence produced on trial from which the jury could reasonably determine that defendant was negligent in failing to properly repair the traffic control signal at the intersection after receiving complaints prior to May 26, 1969, that the signal malfunctioned?

The testimony of Officer Brown regarding the notice to defendant of prior malfunctions of the signals has already been summarized under II. Additionally, Lewallen, one of defendant's signal maintenance employes, testified that on December 7, 1968, he was called to the location on an overtime call, made a visual inspection and changed a relay. He did not, however, test the signal equipment with the voltmeter, ammeter and ohmmeter which he had available. The same employe testified that he had made another overtime call in February 1969. He again made a visual inspection and changed a relay, but did not use any of the testing tools. He further testified without objection that on

the date of the collision he made another overtime call and, after a visual inspection, again replaced a relay but again did not use any of the testing equipment. Lewallen's supervisor McClure gave additional testimony along the same line.[®]

We conclude there was sufficient evidence from which a jury could find that defendant failed to properly repair the traffic signal after receiving complaints prior to May 26, 1969, when the signal malfunctioned.

■ Next, was there a fatal variance between pleadings and proof with respect to plaintiff's allegations of negligence?

The challenged allegation as amended was that defendant Commission was careless and negligent

"* * * [i]n failing to properly repair the traffic control signal that was installed to direct and regulate traffic at the intersection of S.W. 99 W and S.R. 217 after having received complaints prior to the subject accident that the said signal malfunctioned * * *."

While the negligence allegations of plaintiff's complaint were not a textbook example of good pleading, nevertheless they were sufficient to advise defendant of what plaintiff would attempt to prove. The allegation of negligence finally submitted to the jury did not vary enough from the original allegations to constitute reversible error. Oregon Constitution, Amended Art VII, § 3; *L. B. Menefee Lumber Co. v. MacDonald et al.,* 122 Or 579, 260 P 444 (1927). *Cf.,*

---

[®] John Keim, a registered engineer who had worked 28 years with the manufacturer of the traffic control signal involved here, testified that if there was a short in the signal wires external to the controller an electrical tool could be put on the wires to determine whether or not current was flowing through, and that it would show up on the tool.

*Macomber v. Cox,* 249 Or 61, 435 P2d 462 (1968); *Tauscher v. Doernbecher Mfg. Co.,* 153 Or 152, 56 P2d 318 (1936).

We conclude that the trial judge did not err in denying defendant's motions for nonsuit and directed verdict on the grounds that plaintiff's evidence did not support the allegation of negligence in plaintiff's third amended complaint in the form which was finally submitted to the jury.

Affirmed.