Argued and submitted March 2, reversed May 27, rehearing denied June 30, 1981

BROWN,
*Petitioner,*
*v.*
PORTLAND SCHOOL DISTRICT NO. 1 et al,
*Respondents.*

(CA 17422, SC 27366)

628 P2d 1183

Gerald R. Pullen, Portland, argued the cause and filed a brief for petitioner.

James N. Westwood, Portland, argued the cause for respondent Portland School District No. 1. On the brief were William B. Crow and Miller, Nash, Yerke, Wiener & Hager, Portland.

Michael E. Judd, Oregon City, Assistant County Counsel, argued the cause and filed a brief for respondent Clackamas County.

W. Eugene Hallman, Pendleton, filed a brief for the Oregon Trial Lawyers Association as amicus curiae.

TANZER, J.

Tongue, J., specially concurring.

Lent, J., dissenting, joined by Linde, J.

Peterson, J., dissenting.

## TANZER, J.

Plaintiff brought this tort action against Portland School District No. 1 and Clackamas County for damages for personal injuries arising from an automobile accident that occurred in 1978. The complaint alleged that notice of the claim was sent by first class mail to the clerk of the school district and that the letter was "received by" that defendant and "processed and investigated * * * as a tort claim." The complaint also alleged that notice was twice sent to Clackamas County by first class mail: first, to the Clackamas County Highway Maintenance Division, and subsequently, to the County Clerk. It was alleged that each of these notices was "received by defendant" and "processed and investigated * * * as a tort claim."

Defendants demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action because plaintiff failed to plead compliance with the notice provisions of the Tort Claims Act, as specified in ORS 30.275(1). Defendants contend that plaintiff's allegation that his notice was sent by first class mail is insufficient because the statute requires that notice be sent by certified mail.

The trial court sustained the demurrers. Plaintiff did not plead further, and the complaint was dismissed. Plaintiff appealed from the order of dismissal and the Court of Appeals affirmed. We accepted review to examine whether plaintiff's complaint sufficiently alleges compliance with the notice requirements of ORS 30.275(1). We hold that plaintiff has alleged substantial compliance with ORS 30.275(1).

ORS 30.275(1), at the time this action was brought, provided:

"Every person who claims damages from a public body or from an officer, employe or agent of a public body acting within the scope of his employment or duties for or on account of any loss or injury within the scope of ORS 30.260 to 30.300 shall cause to be presented to the public body within 180 days after the alleged loss or injury a written notice stating the time, place and circumstances thereof, the name of the claimant and his representative or attorney, if any, and the amount of compensation or other

relief demanded. Claims against the State of Oregon or a state officer, employe or agent shall be presented to the Attorney General. Claims against any local public body or an officer, employe or agent thereof shall be presented to a person upon whom process could be served upon the public body in accordance with subsection (3) of ORS 15.080. Notice of claim shall be served upon the Attorney General or local public body's representative for service of process either personally or by certified mail, return receipt requested. *A notice of claim which does not contain the information required by this subsection, or which is presented in any other manner than herein provided, is invalid, except that failure to state the amount of compensation or other relief demanded does not invalidate the notice."* [1] (Emphasis supplied.)

This court has applied the theory of substantial compliance in order to ignore technical errors in otherwise valid notice under prior versions of the Tort Claims Act. *Urban Renewal Agency v. Lackey,* 275 Or 35, 549 P2d 657 (1976) (timely notice in the form of a counterclaim). *See also Yunker v. Matthews,* 32 Or App 551 574 P2d 696 (1978) (timely notice in the form of a complaint); *Croft v. Gulf & West/Highway Comm.,* 12 Or App 507, 506 P2d 541 (1973) (letter to Regional Engineer of agency, forwarded to counsel to the agency). *Compare Dowers Farms v. Lake Co.,* 288 Or 669, 607 P2d 1361 (1980).[2] Defendants argue, however, that language added to ORS 30.275(1) subsequent to those cases reflects a legislative intention that the notice requirements be strictly complied with. Defendants refer to what is now the final sentence of ORS 30.275(1), added by Oregon Laws 1977, ch 823, § 3, which we italicized above.

---

[1] This is ORS 30.275(1) as amended by Or Laws 1977, ch 823, § 3. The statute was amended again by Or Laws 1979, ch 284, § 64, to include a reference to the new Oregon Rules of Civil Procedure; the sections dealt with in this opinion were not substantively altered.

[2] This court has also applied the theory of substantial compliance in the context of notice requirements in other statutory schemes. *Stroh v. SAIF,* 261 Or 117, 492 P2d 472 (1972) (involving notice of appeal in workers' compensation case); *School Dist. #1 v. Rushlight & Co.,* 232 Or 341, 375 P2d 411 (1962) (involving the notice provisions of mechanic's lien statute); *Cross et ux. v. Harris,* 230 Or 398, 370 P2d 703 (1962), and *Loe v. Lenhard,* 227 Or 242, 362 P2d 312 (1961) (both involving notice provisions of statute providing liability for aerial crop spraying damages); *Sprague v. Astoria,* 100 Or 298, 195 P 789 (1921) (involving notice provisions of municipal tort claims ordinance).

The legislative history of the 1977 amendments to the Tort Claims Act shows that the legislature was primarily concerned with the insurability of local governments, but that it also addressed relaxation by the courts of the notice requirements. One of the draftsmen of the amendment to ORS 30.275(1) explained that:

"The last sentence was added because of a tendency by the court to relax the notice requirement. Not only in the State of Oregon, but more radically in other states, it is becoming the effect of the law that if you give a handwritten notice scrawled on the back of an envelope to a janitor at city hall at 3 a.m. you have effectively tendered a claim. Even when the notice ends up in a wastebasket somewhere."[3]

The legislative concern that notice actually be received at the proper level of authority by the governmental body in question is manifested by language emphasizing the strictness of the required notice. The language appears to have been intended to confine the doctrine of substantial compliance within narrow limits, but not necessarily to eliminate it. There is no suggestion that the proponents or the legislature intended to preclude recovery or escape liability by draconian enforcement of technical requirements or to preclude compliance where notice proper in form and content was actually received by the statutorily designated official.

The sufficiency of the notice given must be determined with the object of the statute in mind and technically deficient claims should not be barred where the purpose of the statute is served. *Sprague, supra,* 100 Or at 304-305. The doctrine of substantial compliance has previously been used by this court to avoid the harsh results of insisting on literal compliance with statutory notice provisions where the purpose of these requirements has been met.

In *Urban Renewal, supra,* we held that the purpose of the Tort Claims Act notice sections is to give the public

---

[3] Hearings on HB 3106 before House Judiciary Committee, 60th Or Legis Ass'y (April 14, 1977), testimony of Mr. Bill Blair, proponent of the bill, Minutes pp. 8, 9. Mr. Blair's later explanations also suggest that the sentence was motivated by decisions of courts in other states which were more forgiving of statutorily inadequate notice thant the decisions of Oregon courts. *Ibid,* (May 24, 1977), pp. 4-5.

body timely notice of the tort claim and to allow its officers an opportunity to investigate matters promptly and ascertain all necessary facts. 275 Or at 41. We noted that the Minnesota Supreme Court had held the purpose of their Tort Claims Act, upon which Oregon's statute was based, to be

> " "* * * [T]o protect against dissipation of public funds by requiring that the municipality be promptly furnished with information concerning a claim against it so that full opportunity is provided to investigate it, to settle those of merit without litigation, and to correct any deficiency in municipal functions revealed by the occurrence. By timely service of notice, the municipality is also afforded protection against stale or fraudulent claims or the connivance of corrupt employees or officials.' " 275 Or at 41, n.5.

To achieve the Act's purpose of prompt notice to public bodies, notice of claims must be timely received by the correct official. The amended statute describes the manner in which notice is to be given, but its purpose is to bar claims where proper notice is not received by the proper official. That purpose allows for substantial compliance with the notice requirements, but the margin for diver gence from strict compliance is narrow.

Where the notice required by ORS 30.275(1) is actually received in the requisite time period by the statutorily designated official, the statutory purpose is satisfied. To automatically require that the notice be sent by certified mail under these circumstances would be to ignore the purpose of the statute and to make it a mere trap for the deserving but unwary claimant. In *Stroh v. SAIF,* 261 Or 117, 492 P2d 471 (1972), involving a similar requirement that a notice be sent by certified or registered mail, we held that actual notice is the equivalent of notice by certified mail. We stated that the effect of the statute specifying notice by certified mail is to make a notification so sent effective even though it is not received. However, the court stated that it does not follow that failure to certify the notification renders it ineffective where it is actually received by the noticee. 261 Or at 120. That reasoning is also applicable here.

■ Thus, we hold that where the notice required by ORS 30.275(1) is actually received by the statutorily designated official, the statute has been substantially complied

with and the notice of claim is valid. Because plaintiff's allegations that proper notice was received by defendants and processed and investigated as tort claims are amenable to proof that proper notice was actually received by the correct officials, we hold that he has sufficiently pled substantial compliance with the notice requirement.

Our opinion states our difference of opinion with the dissent of Lent, J., but a few additional words in answer to the dissent of Peterson, J., are appropriate. His dissent concludes with a call for literal application of clear statutes "unless an absurd result is reached thereby." In this, the dissent is consistent with *Johnson v. Star Machinery Co.*, 270 Or 694, 530 P2d 53 (1974), where we said:

> "* * * [I]f the literal import of the words is so at variance with the apparent policy of the legislation as a whole as to bring about an unreasonable result, the literal interpretation must give way and the court must look beyond the words of the act. * * *" 270 Or at 704.

To deny a claim because his notice of claim was not posted correctly even though it was actually received by the very official to whom the statute requires posting seems to us an absurd result which the legislature did not or would not have intended. Although the dissent takes an arguable position, we find the arguments in favor of substantial compliance to be more persuasive.

Plaintiff also argues that he need not allege literal compliance with the notice requirements because he has alleged actions of defendants which are tantamount to waiver or which act as an estoppel. If plaintiff's proof of substantial compliance fails, then waiver and estoppel will become material. Assuming for argument that a governmental body can waive notice requirements or be estopped from asserting them, we hold nevertheless that plaintiff has not sufficiently alleged facts which show waiver or estoppel.[4]

As in *Adams v. OSP*, 289 Or 233, 611 P2d 1153 (1980), on demurrer, we examine plaintiff's allegations of

---

[4] We do not reach the issues of whether a public body can waive compliance with the notice requirements of ORS 30.275 or whether public entities may be estopped from insisting on strict compliance with those requirements.

both waiver and estoppel by allowing all reasonable inferences from the pleadings. *See also Christensen v. Epley,* 287 Or 539, 601 P2d 1216 (1979). Even under liberal scrutiny, however, we conclude that plaintiff has not alleged the essential elements of either waiver or estoppel.

■     In *Waterway Terminals v. P. S. Lord,* 242 Or 1, 406 P2d 556 (1965), we defined waiver as the intentional relinquishment of a known right, quoting an earlier Oregon case regarding the applicable rule for pleading waiver:

> " * * * in the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to. To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part. * * * " 242 Or at 26-27.

*Accord Great American Ins. v. General Ins.,* 257 Or 62, 72-73, 475 P2d 415 (1970). Plaintiff's allegations that each defendant received a notice and processed and investigated it as a tort claim pursuant to ORS 30.275 does not sufficiently allege defendants' intentional relinquishment of their right to rely on proper notice as a condition precedent to commencement of a tort action against them. Plaintiff alleges no clear, unequivocal or decisive act showing a purpose to waive the tort claims notice requirements; prudent public officials may well process and investigate alleged claims without intending to waive their objection to improper notice of such claims. Thus, we conclude that the complaint is insufficient to allege waiver.

■     The traditional theory of equitable estoppel requires that plaintiff plead a misrepresentation and his reliance thereon. *See Earls et ux v. Clarke et al.,* 223 Or 527, 530-531, 355 P2d 213 (1960). Plaintiff has pled neither of these elements. However, plaintiff argues that defendants' alleged actions fall under a doctrine which has been advanced as an alternative branch of estoppel, estoppel through "standing by without action." *See Belleville v. Davis,* 262 Or 387, 498 P2d 744 (1972). In *Belleville,* a

specific peformance case, the court recognized that type of estoppel, quoting Prosser, Torts 692-93, § 105 (4th ed):

"The second branch does not depend upon positive misrepresentation, but is based upon a mere failure to take take action. It arises where the party 'stands by' and allows another to deal with his property, or to incur some liability toward him, without informing the other of his mistake. Thus he may not remain silent when he sees his goods sold to a stranger, or improvements made upon his land, and still enforce his rights against the innocent wrongdoer. The law of estoppel creates a duty to speak, under penalty of loss of the right to assert the truth at a later time. Since in such a case there is no active misleading of the other party, who has misled himself, the courts have insisted upon some fault in connection with the conduct of the one to be estopped. There is no estoppel where he had remained silent reasonably and in good faith; he must be aware of his rights, and must realize that the other is about to act under a mistaken belief. Thus this branch of estoppel requires either an intent to mislead or unreasonable conduct amounting to negligence in failing to act, rather than the strict responsibility imposed in estoppel by misrepresentation." 262 Or at 398, n.6.

Plaintiff has not alleged that the defendants were guilty of "unreasonable conduct amounting to negligence in failing to act" or "an intent to mislead." Hence he does not allege a cause of action based on either branch of estoppel.

We reverse the Court of Appeals and hold that defendants' demurrers were improperly sustained.

Reversed and remanded.

**TONGUE, J.**, specially concurring.

I concur in the result reached by the majority, but for a different reason. In my opinion, plaintiff's complaint was sufficient to entitle him to offer evidence in support of his contention that defendants had accepted the notice mailed to them and had waived any defect arising from the fact that the notice had been sent by regular mail, rather than by certified mail.

One of the issues on which the parties are in disagreement is whether defendants, as municipal corporations, could waive the defect in the mailing of the notice by

regular mail, instead of by certified mail. In my opinion, such a defect can be waived by a municipal corporation.

This court, in *Sprague v. Astoria,* 100 Or 298, 195 P 789 (1921), quoted with approval at 309-10 from McQuillin, Vol. 8 (Supp), Municipal Corporations, Section 2714, as follows:

> " 'The waiver of the requirement (notice of the accident) is not sanctioned, although certain defects in the notice may be waived, as contradistinguished from waiver of absence of notice.' "

Our later decision in *Bankus v. City of Brookings,* 252 Or 257, 449 P2d 646 (1969), cited by defendants, did not involve a defective notice and did not overrule our previous decision in *Sprague.*

Plaintiff's complaint alleged not only that a claim was made by mailing a letter and that the letter was received. The complaint also alleged that the claim was "processed and investigated by defendant Clackamas County [and by defendant school district] as a tort claim pursuant to ORS 30.275." The majority, with no citation of supporting authorities, holds that plaintiff's complaint "does not sufficiently allege defendants' intentional relinquishment of their right to rely on proper notice as a condition precedent to commencement of a tort action against them" in that "[p]laintiff alleges no clear, unequivocal or decisive act showing a purpose to waive the tort claims notice requirements" and that "prudent public officials may well process and investigate alleged claims without intending to waive their objection to improper notice of such claims."

I disagree. In my opinion, it is far more likely that a defendant who receives a claim by regular mail, rather than by certified mail, but then proceeds not only to "investigate and process" the claim, but does so "as a claim pursuant to" the Tort Claims Act, does so with an intent to waive the irregularity in the method of mailing. Indeed, it is somewhat incredible to say that a defendant who could immediately reject a claim on the ground that it was improperly mailed, without incurring any further time or expense, would incur the substantial time and expense involved in "investigating and processing" the claim "as a

claim pursuant to" the Tort Claims Act unless the defendant intended to waive that technicality.

If this be so, as I believe it to be, these allegations in plaintiff's complaint are not so defective as to require this court to deny to the plaintiff a trial at which he may have an opportunity to offer evidence in support of these allegations from which a jury could properly find that defendant did indeed intend to waive that technicality.

ORCP Rule 12A provides that:

"All pleadings shall be liberally construed with a view to substantial justice between the parties."

In *Emerick Co. v. Bohnenkamp & Assoc.*, 242 Or 253, 409 P2d 332 (1965), this court (at 256) held that:

" 'The principal function of pleadings is to enable litigants to bring their controversies to trial on the merits, and, generally speaking, the rules concerning pleadings should not be permitted to defeat a party's right to a trial except when to do otherwise would be unjust to his adversary or violate some express command of the statute.' *Ross v. Robinson*, 1944, 174 Or 25, 26, 147 P2d 204. The same principle has been repeated several times. *Perkins v. Standard Oil Co.*, 1963, 235 Or 7, 383 P2d 107, 383 P2d 1002; *Parker v. Faust*, 1960, 222 Or 526, 353 P2d 550; *L.B. Menefee Lumber Co. v. MacDonald et al*, 1927, 122 Or 579, 260 P 444."

In recognition of this same principle, and after reference to Section 1-902 OCLA (since supplanted by ORCP Rule 12A), this court held in *Stotts v. Johnson and Marshall*, 192 Or 403, 234 P2d 1059, 235 P2d 560 (1951) at 415, that:

"Under statutes similar to the one just quoted, construction attributes to the pleading all facts which can be implied by fair and reasonable intendment from those expressly averred; provided, of course, that judicial construction never places upon any pleading a meaning contrary to its express language: 71 C.J.S., Pleading, § 54, p. 123."

Examples of the application of this rule in somewhat similar cases include the more recent decision by this court in *Cody v. Ins. Co. of Oregon*, 253 Or 587, 454 P2d 859 (1969), holding (at 593) that a complaint was sufficient in alleging facts sufficient to constitute an estoppel by an

insurance company to assert the statute of limitations as a defense in an action on an insurance company, despite failure to specifically allege the elements of an estoppel. Again, in *Borden v. City of Salem,* 249 Or 39, 436 P2d 734, this court (at 41) rejected plaintiff's contention that the city had "waived its governmental immunity," holding that the city had sufficiently raised that contention by pleading in its answer "the ultimate facts from which governmental immunity is implied as a matter of law * * * ." *See also Rich v. Tite-Knot Pine Mill,* 245 Or 185, 197, 421 P2d 370 (1966).

Similarly, in *Mezyk v. National Repossessions,* 241 Or 333, 339, 405 P2d 840 (1965), this court held, although in a different context, that:

"Under the allegations of the complaint, the plaintiff is entitled to offer any admissible evidence relevant to these two issues. We hold that it is reasonably conceivable that the plaintiff could introduce evidence which would enable the trier of the facts to find that the defendant should have foreseen both of these contingencies."

As also held in *Brennan v. City of Eugene,* 285 Or 401, 591 P2d 719 (1979):

"Because this case is before us on demurrer, we must assume the truth of all plaintiff's well pleaded allegations and any facts that might conceivably be adduced as proof of such allegations." Citing *Mezyk,* 285 Or at 405.

More specifically, this court held in *Jaloff v. United Auto Indemnity Exch.,* 121 Or 187, 195, 253 P 883 (1926), that:

"Waiver of the performance of a condition precedent may be pleaded by a statement of facts sufficient to establish a waiver. In other words, it is unnecessary to aver waiver in terms where the facts alleged show a waiver * * * ." (Citing many cases).

It follows, in my judgment, that under the allegations of this complaint that plaintiff's claim was "processed and investigated" by defendants "as a tort claim pursuant to ORS 30.275," plaintiff is entitled to a trial in this case so as to afford him an opportunity to introduce evidence, if he can, from which a jury could properly find that in "processing and investigating" plaintiff's claim "as a tort claim pursuant to ORS 30.275," defendants intended to waive

any defect arising from the fact that plaintiff's claim was sent to them by regular mail, rather than by certified mail.

At the least, now that this case is to be remanded for trial in accordance with the decision by the majority, plaintiff is entitled to file an amended complaint alleging in more detail the facts supporting his contention of waiver and to offer evidence in support of such allegations.

**LENT, J.,** dissenting.

The majority opinion holds that the complaint states facts sufficient to allow the plaintiff to proceed to trial and to present evidence that the notice of claim was served upon "a person upon whom process could be served upon the public body in accordance with subsection (3) of ORS 15.080."

The majority holds the complaint is sufficient because it alleges by implication that the "person upon whom process could be served" actually received the notice. The majority finds this to be substantial compliance with the statute, and I agree that it is. My disagreement with the majority is that the legislature has decreed, as commandingly as the English language permits, that substantial compliance is not sufficient.

In 1967 the Oregon Legislature enacted the "general law" required by Or Const Art IV, § 24, to allow actions against the state and other public bodies for recovery of damages for tortious injury. One of the statutory conditions of the waiver of prior immunity was the giving of notice of the claim in the manner and to the person described. Or Laws 1967, ch 627, § 5. Absent the giving of the required notice, a cause of action could not be maintained. *Id.*

As the majority has noted, the Court of Appeals and this court had allowed causes to be maintained where notice had been presented in a manner not strictly in compliance with the statute.[1] When the statute was amended in 1977 to add what is now the last sentence of ORS

---

[1] *Urban Renewal Agency v. Lackey,* 275 Or 35, 549 P2d 657 (1976); *Yunker v. Matthews,* 32 Or App 551, 574 P2d 696 (1978) (dealing with facts which predated the 1977 amendments); *Croft v. Gulf & West/Highway Comm.,* 12 Or App 507, 506 P2d 541 (1973).

30.275(1), the attention of the legislature was focused directly upon the tendency of the courts to relax the terms of the statutory condition precedent to maintaining a cause of action. The sentence quite simply says that a notice is invalid if it is presented in any manner other than "personally or by certified mail, return receipt requested."

I perceive that by this amendment the legislature sought to narrow the scope of trial upon the issue of whether the proper person had received the required notice. The amendment would allow proof of satisfaction of the notice requirement only by evidence showing personal service upon the proper person or production of the return receipt, which would demonstrate service had been made by certified mail. Proof could be accomplished in no other way.

It is tempting to agree that substantial compliance suffices because if the person statutorily designated to receive notice actually receives the notice, the purposes of requiring notice are served; however, the legislature clearly manifested its intent that evidence of actual receipt in any manner other than that specified in the statute would not suffice to satisfy the condition precedent to maintaining the cause of action. The legislative purpose was to relieve public bodies from having to defend against assertions of notice having been given other than as prescribed. A consequence would be avoidance of spending judicial resources upon trial of the issue of whether the right person actually received the notice in other than the prescribed manner. While I might disagree with the policy decision, it is not absurd and does not produce any absurd result. The majority, by holding that a plaintiff can present evidence that the proper person actually received notice in some other manner, simply vitiates the amendment.

After all, it is not difficult strictly to comply with the statute. Its terms are simple, direct and easily understandable. The physical acts required are themselves not onerous or complicated. *Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1361 (1980).

I agree with the majority that the plaintiff has not alleged the essential elements to prevail upon a theory of either waiver or estoppel. I express no opinion as to

whether either theory is available to a plaintiff in this kind of action.

I would affirm the trial court and the Court of Appeals.

Linde, J., joins in this dissent.

**PETERSON, J.,** dissenting.

I dissent.

The majority opinion reaches a desirable result, a result which is consistent with the ethereal standard of "fairness," and which is consistent with the aim the statute seeks to achieve. But I am unwilling to pay the price that the majority is willing to pay to attain a desired result.

I agree that the decision the majority reaches is consistent with an *implicit unstated* purpose of the statute: "To give the public body timely notice of the tort claim and to allow its officers an opportunity to investigate matters promptly and ascertain all necessary facts" (291 Or at 81-82). But that conclusion is reached at the expense of an express requirement of the statute—an express requirement adopted by the legislature to attain that very same goal—and by reading out of the statute the express requirements that the notice must be given "* * * either personally or by certified mail, return receipt requested * * * " and that "a notice of claim * * * which is presented in any other manner * * * is invalid * * * ."

Because the majority does not purport to construe an ambiguous statute, there is no need to look behind the statute to determine the legislative intent. The statute is clear on its face. Applying the plain, unambiguous meaning of the statute attains the underlying, unstated purpose of the statute. The majority says, in effect, "Our construction also attains the stated purpose of the statute." But that analysis merely substitutes our judgment for the legislative judgment. We do not legislate.

Nor is this a case in which a literal application of the statute frustrates the purpose of the statute. As stated above, the application of the statute according to its plain meaning achieves that end. I do not deny that proper

judicial construction of a statute "* * * requires recognition and implementation of the underlying legislative purpose, a sensitive process which must accommodate society's claims and demands reflected in that purpose. To do this, as Roger Traynor puts it, we need 'literate, not literal' judges, lest a court make a construction within the statute's letter, but beyond its intent."[1] But one does not (or should not, I should say) need to construe an unambiguous statute.

My difference with the majority opinion is over the meaning of the changes made by the 1977 legislature to ORS 30.275. The changes read as follows:

"* * * Notice of claim shall be served upon the Attorney General or local public body's representative for service of process either personally or by *certified mail, return receipt requested.* A notice of claim which does not contain the information required by this subsection, *or which is presented in any other manner than herein provided, is invalid,* except that failure to state the amount of compensation or other relief demanded does not invalidate the notice." (Emphasis added.)

The majority correctly points out that in *Urban Renewal Agency v. Lackey,* 275 Or 35, 549 P2d 657 (1976), this court applied the theory of substantial compliance to a prior version of the Tort Claims Act. The Court of Appeals did likewise in *Yunker v. Mathews,* 32 Or App 551, 574 P2d 696 (1978), and *Croft v. Gulf & West./Highway Comm.,* 12 Or App 507, 506 P2d 541 (1973). The majority also correctly points out, "This court has also applied the theory of substantial compliance in the context of notice requirements in other statutory schemes [citing cases]." (Majority opinion, n 2). However, the key factor that must be kept in mind is that none of the statutes involved in the cases which the majority cites, including the predecessors to ORS 30.275(1), contained clauses comparable to the last sentence of ORS 30.275(1), and none of these cases involved amendments which were designed to avoid the very result reached by the majority opinion in this case.

The majority, despite the lack of any ambiguity in the statute, then embarks upon a quest to determine whether the legislature, by adding the final sentence

---

[1] Aldisert, The Judicial Process 170 (1976).

quoted above, intended that the theory of substantial compliance would no longer apply to ORS 30.275(1). The majority ascribes the following purpose for the addition of the final sentence. "The language appears to have been intended to confine the doctrine of substantial compliance within narrow limits, but not necessarily to eliminate it." (291 Or at 81). The majority also states that "the margin for divergence from strict compliance is narrow." (291 Or at 82). I believe that the purpose of the amendment was to eliminate the application of the doctrine of substantial compliance to ORS 30.275(1).

The clear meaning of the words, "in any other manner than herein provided," forecloses the question. We need not look behind the statute. But even if the legislative history is examined, it reflects the intention that substantial compliance no longer would be adequate to meet the mandate of ORS 30.275(1).

The reference in the majority opinion (291 Or at 81) to the testimony before the legislature concerning the "tendency by the court to relax the notice requirement," likely refers to the Oregon cases cited above, and likely reflects the intention that the manner of giving notice be as provided in the statute and in no other way. This is borne out by the statute itself. ORS 30.275(1) concludes with a clear statement (a) that a notice "which does not contain the information required" is invalid, and (b) that a notice "which is presented in any other manner" is invalid. There is a specific exception that a "failure to state the amount of compensation or other relief demanded does not invalidate the notice." That language indicates to me that except for those exceptions, no other variations from the statute were to be permitted. The legislature is charged with the knowledge that the Supreme Court, previous to the 1977 session, had ruled that notice actually received by regular mail is sufficient even though the statute calls for notice by certified mail. *Stroh v. SAIF,* 261 Or 117, 492 P2d 472 (1972). With this knowledge in mind, the legislature did not stop with the requirement that the notice be sent by certified mail. After making the certified mail requirement it then added the language: "a notice * * * which is presented in any other manner than provided in this

section, is invalid, * * *."[2] The legislature made its intent clear. Surely, it is not necessary for the legislature to re-enact the amendment to ORS 30.275(1) in 1981 and then add "and this time we really mean it," for the court to give effect to the clear legislative intent. The conclusion is obvious that, rather than giving *sub silentio* approval to the recent appellate court decisions cited by plaintiff, the legislature made a deliberate choice to repudiate the substantial compliance approach of the courts and to clearly express its requirement that there be *strict* compliance with the notice requirements of the Tort Claims Act. The Court of Appeals correctly stated, "Unlike the situation in *Stroh v. SAIF,* 261 Or 117, 492 P2d 472 (1972), here the legislative purpose that notice conform to the statutory requirements is clearly stated. Those requirements were not met. *See Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1361 (1980)." *Brown v. Portland School Dist. #1,* 48 Or App 571, 574, 617 P2d 665 (1980).

Certainly the plain meaning of the final sentence of ORS 30.275(1) does not support the majority's conclusion; nor does the legislative history support its conclusion that the legislature "intended to confine the doctrine of substantial compliance within narrow limits" (291 Or at 81). I view the majority's holding as an unwarranted judicial excursion into the legislature's statute-making prerogative. Let me illustrate with this hypothetical scenario.

[The time: June, 1977.

The place: State Legislature, Salem, Oregon. An attorney (A) in the office of the Legislative Counsel Committee is hard at work. An angry legislator (L) enters.]

L:   Are you familiar with these cases of *Urban Renewal,*[3] *Yunker,*[4] and *Croft?*[5]

A:   No, I'm not. Why do you ask?

---

[2] The addition of this language distinguishes this case from *Stroh v. SAIF,* 261 Or 117, 492 P2d 472 (1972).

[3] *Urban Renewal Agency v. Lackey,* 275 Or 35, 549 P2d 657 (1976).

[4] *Yunker v. Mathews,* 32 Or App 551, 574 P2d 696 (1978).

[5] *Croft v. Gulf & West./Highway Comm.,* 12 Or App 507, 506 P2d 541 (1973).

L: They hold that so long as the public body gets notice, that the written notice requirement of ORS 30.275(1) has been met. I want you to prepare an amendment that the notice has to be given either by personal service or by certified mail, return receipt requested, and no other way!

A: Tell you what I'll do. I'll draft an amendment requiring those methods of service, and those only, and I'll add language to the effect that service in any other manner is invalid. That should do it.

L: Good!

[Same place, four years later, June, 1981. *A* is sitting at the same desk. *L* enters, angrier than in 1977, carrying a sheaf of papers.]

L: You sure know how to draft statutes! Do you know what the Supreme Court just did?

A: No, what'd they do?

L: In this *Brown* case *[L* throws sheaf of papers on *A's* desk] they held that service by first class mail was O.K., so long as it was received. They said that we intended to "confine the doctrine of substantial compliance within narrow limits."

A: How could they hold that? I drafted that statute as tightly as I could, saying that presentation in any other manner was invalid. I even listed the only two exceptions [amount of compensation and relief demanded] which need not be strictly complied with. What more could I have said?

L: I don't know! But I want you to prepare an amendment saying what I meant to say four years ago, clearly and unequivocally.

A: Gosh, I'll try. I suppose I could say something along these lines:

"A notice of claim which is presented in any other manner than herein provided is invalid, and we mean it!"

Or, I could say:

"A notice which is presented in any manner other than personally or by certified mail, return receipt requested, is invalid. No service is valid which is presented by regular mail, by registered mail, by parcel post, by telegram, by United Parcel Service, Federal Express, or any manner other than personal service or certified mail, return receipt requested."

L: Then do it!

By this scenario I seek to make two points. First, the statute is clear on its face. It is neither necessary nor

appropriate to resort to legislative intent. Second, it is difficult, if not impossible, to make the statute any clearer than it is.

In *Dowers Farms* [6] we held that the statute barred recovery even though the county had actual notice of the claim, inspected the plaintiff's field, and investigated the claim. We held that the plaintiff was barred even though the purpose of the Tort Claims Act [quoting the majority at 81-82: "to give the public body timely notice of the tort claim and to allow its officers an opportunity to investigate matters promptly and ascertain all necessary facts"] had been met, saying:

> "The legislative requirement that written notice be caused to be given to the county clerk in a claim against the county is not a difficult one with which to comply * * *." 288 Or at 686.

The majority states (291 Or at 81) that "[t]he sufficiency of the notice given must be determined with the object of the statute in mind and technically deficient claims should not be barred where the purpose of the statute is served." That cannot be the test, for implicit in that test is the proposition that even though the statute is clear, we look behind it to see if the statutory purpose has been met. That rule of statutory construction is not only new, but it makes this judicial body into a legislative body in which *we* determine not whether the requirements of the statute have been met, but whether the purposes which underlie the statute have been met.

In a recent dissenting opinion, one member of this court opined:[7]

> "Even were there no statute, however, the rationale offered by the majority for its new rule requiring disclosure of recorded grand jury testimony is no more than that it is required 'in the furtherance of justice.' Whenever an appellate court relies solely upon a phrase as amorphous as that, red flags should fly and sirens should sound because it is usually a signal that the court is accomplishing judicial will rather than legislative or constitutional intent. * * *" 290 Or at 602.

The statement of a rule that when the policy underlying the statute is satisfied, the statute is deemed complied with, is as amorphous as the phrase "in the furtherance of justice," and is unique, dangerously so. That conclusion

---

[6] *Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1361 (1980).

[7] Tanzer, J., dissenting in *State v. Hartfield,* 290 Or 583, 624 P2d 588 (1981).

assumes a desirable result, rather than reasons toward it, and converts what the legislature said, clearly and directly, into what the majority believes the legislature would have said or should have said, had this case been before it.

Arthur W. Murphy, in a recent Columbia Law Review article, stated:[8]

"The job of statutory interpretation will never be easy. On the one hand the court cannot restrict itself to the literal words of the statute. Yet, as Learned Hand has said:

"'When a judge tries to find out what the government would have intended which it did not say, he puts into its mouth things which he thinks it ought to have said, and that is very close to substituting what he himself thinks right. Let him beware, however, or he will usurp the office of government, even though in a small way he must do so in order to execute its real commands at all.' Whether in a given case the court should take upon itself the task of 'legislating' or leave the job to the legislature itself involves a very sophisticated and delicate judgment about the legal system and the relationships between our legal institutions. On the one extreme there can be a serious question of legitimacy and on the other a serious risk of stagnation. About all that can be said with certainty is that such questions cannot be answered by the simple-minded formulae often advanced, including the plain meaning rule."

I concede everything the majority says regarding the purpose of the notice provisions of the Tort Claims Act. I concede that my construction of the statute makes it a "trap for the deserving but unwary claimant" (majority opinion at 82). But no more so than many other statutory requirements. I am unwilling to pay the price the majority is willing to pay, sacrificing long-established rules of statutory construction on the altar of a cause of a "deserving but unwary claimant," and converting every trial judge into a person who, in deciding whether a statute is to be applied, is required to follow, not the clear terms of the statute, but the unstated purpose which underlies it. I am not equal to that task. Therefore, by this opinion, I feebly raise my flag and sound my siren, not because a deserving claimant wins but because, in doing so, we are

---

[8] A. Murphy, *Old Maxims Never Die: The "Plain-Meaning Rule" and Statutory Interpretation in the "Modern" Federal Courts,* 75 Colum L Rev 1299, 1317 (1975).

interring what I deem to be the cardinal rule that clear and unambiguous statutes should be applied according to their terms, unless an absurd result is reached thereby. We do not construe that which needs no construction.