# IN THE OREGON TAX COURT

## GIBBONS et al
*v.*
## UMATILLA COUNTY PEOPLE'S UTILITY DISTRICT
(TC 1657)

Joseph T. McNaught, Pendleton, represented plaintiffs.

Donald R. Duncan, Athena, represented defendant.

Decision for plaintiffs rendered June 29, 1982.

**CARLISLE B. ROBERTS, Judge.**

This suit was filed by twelve interested taxpayers (pursuant to ORS 294.485), praying that the 1981-1982 tax levy of the defendant, Umatilla County People's Utility District, should be declared void because of the district's failure to comply substantially with the requirements of the Local Budget Law (particularly ORS 294.396) and of ORS 310.060

(which requires that a taxing district give notice of its levy to the county assessor "not later than July 15 of each year * * *").

The defendant Umatilla County People's Utility District (UCPUD) was and is organized pursuant to ORS chapter 261 and, with respect to the levy of taxes on real property within its boundaries, is subject to the Local Budget Law. (In a prior Order Denying Defendant's Motion to Dismiss Amended Complaint, filed in this court on February 3, 1982, the court held that the levy which is the subject of this suit is not the type of levy which is referred to in ORS 261.605(1)(c) and was not a levy in connection with the "creation" of the district. Consequently, the cause of suit is within the Oregon Tax Court's jurisdiction under ORS 294.485.)

The Local Budget Law, ORS 294.305 to 294.520, must be carefully observed by the governing bodies of those municipalities which have the power to impose property taxation (including people's utility districts). It is one of Oregon's strongest guarantees in the legislative efforts to maintain a popular democratic government and the fiscal integrity of taxing bodies. The purposes of the Local Budget Law are stated in ORS 294.321:

"(1)   To establish standard procedures for the preparation, presentation, administration and appraisal of budgets of municipal corporations;

"(2)   To provide for outlining of the programs of a municipal corporation and the fiscal policy which is to accomplish these programs;

"(3)   To provide for estimation of revenues, expenditures and proposed tax levies;

"(4)   To provide specific methods for obtaining public views in the preparation of fiscal policy;

"(5)   To provide for the control of revenues and expenditures for the promotion of efficiency and economy in the expenditure of public funds; and

"(6)   To enable the public, taxpayers and investors to be apprised of the financial policies and administration of the municipal corporation in which they are interested."

As a municipal corporation with the power to levy tax upon property, the defendant UCPUD is required to maintain

its records and accounting on a "fiscal year" basis, commencing on July 1 and closing on June 30. (ORS 294.311(13).) The Local Budget Law's definition section, ORS 294.311, defines "current year" as the "fiscal year in progress" and defines the "ensuing year" as the fiscal year following the "current year." These different years must be carefully distinguished because the Local Budget Law has a time scheme which requires that the process of budgeting for the ensuing fiscal year shall begin in the current year in order to insure the delivery of the authorized tax levy to the county assessor "not later than July 15 of each [ensuing] year." (ORS 310.060(1).)

It is unlawful for a municipality to expend money or to levy a tax without compliance with the Local Budget Law. ORS 294.326. In order to achieve its goal under ORS 310.060(1) in time, it is manifestly necessary that the defendant begin its budgetary process at such a date in the current year as will guarantee its completion by July 15 of the ensuing year.

It is necessary (at least by March of the current year) for the "governing body" (i.e., the board of directors of a public utility) to appoint a budget officer (ORS 294.331), to appoint public members of the budget committee (ORS 294.336). The budget committee must then obtain detailed estimates required by statute as to the expected expenditures of the municipality for the ensuing year (ORS 294.352), to estimate the budget resources for the ensuing year by funds and by sources (ORS 294.361), to make the estimate of the tax levy for the ensuing year (ORS 294.381), to compile a financial summary of the budget as proposed by the budget committee (ORS 294.386), to prepare a "budget message" which will explain the budget document to the public (the budget document consisting of the estimates of expenditures and budget resources as set forth on the estimate sheets, tax levy and the financial summary) (ORS 294.391 and ORS 294.311(6)), and to prepare newspaper notices of a budget meeting which will review the budget document, which notice must be published not less than eight days and not more than fourteen days before said meeting (in order to advise the public that the meeting is a public meeting and that any person may discuss proposed programs with the budget committee at that time.) (ORS 294.401.)

ORS 294.396 specifically requires:

"The budget message and budget document shall be prepared a sufficient length of time in advance to allow the adoption of the budget by the close of the current fiscal year." [In this instance, not later than June 30, 1981.]

After the budget committee approves a proposed budget, it is still necessary for the board of directors of a PUD to hold a hearing on the budget document at which any person may appear (ORS 294.430). Before that hearing can be lawfully held, the budget committee must publish a budget summary and notice of hearing at least one time in a newspaper of general circulation not less than 15 days nor more than 25 days before the meeting of the governing body (ORS 294.421). A second notice must be published eight to 14 days before the scheduled hearing. Before the governing body finally adopts the budget and declares a tax levy, "consideration shall be given to matters discussed at the public hearing." (ORS 294.435.) The final budget must be adopted by June 30. (ORS 294.396.) These requirements take time. And, as above stated, the document approving the levy is required to be filed with the county assessor (in this instance, not later than July 15, 1981).

Provision is made by statute for an extension of time in which to file a tax levy but, in this instance, an extension was not properly requested of the county assessor and without regard to the pertinent statutes. Accordingly, the county assessor did not extend the levy on the tax rolls. He followed the requirements of ORS 310.065.

What actually occurred has been stipulated by the parties and may be summarized as follows: The UCPUD was formed in November 1977 and it did budget for the fiscal years 1978-1979, 1979-1980 and 1980-1981. In spite of this experience, what took place in preparation for the fiscal year 1981-1982 can only be described as a fiasco. It appears that the then board of directors of the UCPUD mistakenly believed that, since it had levied taxes in prior years and "had an approved tax base," it did not need to comply with the Local Budget Law as long as the district's expenditures were within the tax base plus six percent. Hence, the preparation of the budget for the fiscal year 1981-1982 was not even begun before the end of the 1980-1981 fiscal year!

On July 14, 1981, members of the UCPUD's board of directors met with a certified public accountant to discuss the annual financial report to the Oregon Secretary of State, Division of Audits. The board's failure was then discovered and the members were stimulated by their accountant to review their procedures. Thereafter, on or about August 3, 1981, at the board's request, the accountant began preparation of the 1981-1982 fiscal year budget (an operation which should have been completed, at latest, before July 1, 1981). After the budget process was begun, other requirements in the time sequence and particulars in the implementation of the budget were overlooked or performed incorrectly by the board or its agents.

On or about October 1, 1981, the accountant advised the county assessor, in person, at the Pendleton Elks Lodge, of the fact that the levy would be delayed past October 15, 1981 (the date the county assessor is required by ORS 311.115 to deliver the assessment roll to the tax collector). The assessor was also orally advised of the amount which would be levied and that the notice of levy would be delivered to the county assessor's office on October 16, 1981.

On October 16, 1981, the UCPUD budget hearing was held (pursuant to notices published on October 1 and October 8, 1981), the fiscal year 1981-1982 budget was adopted by the board of directors and a tax levy of $15,900 was declared. The notice of the tax levy was immediately taken to the county assessor's office and delivered at approximately noon on October 16, 1981.

The assessor had closed the Umatilla County tax rolls on October 15, 1981, and quite properly had omitted the UCPUD's undelivered notice of tax levy. (ORS 310.065.)

The parties have stipulated that the county assessor estimates that a supplemental tax roll for the PUD, requiring individual billings to 1,582 real, personal and utility tax accounts within the boundaries of the PUD could cause additional out-of-pocket costs to Umatilla County for postage and computer programing in the range of $10,000 to $15,000.

■ As above stated, ORS 294.326 clearly states that: "* * * It is unlawful for any municipal corporation to expend money or to levy a tax in any year upon property subject to

taxation unless the municipal corporation has complied with the provisions of ORS 294.305 to 294.520."

In answer to this, the defendant has pleaded *"substantial* compliance."

■ "Substantial compliance" is a dilution of the mandate of compliance which is occasionally accepted by the courts. This is dangerous ground on which to tread. *(See Brown v. Portland School Dist. No. 1,* 291 Or 77, 628 P2d 1183 (1981).)* No definitions of this term have been found in the Oregon case law but this is an old problem. The question of the sufficiency of compliance by administrators of statutory programs has led to definitions in a substantial number of cases in other states. *See* 40 *Words and Phrases* (perm ed), "Substantial Compliance." In *Stasher v. Harger-Haldeman,* 22 Cal Rptr 657, 660, 372 P2d 649, 58 Cal 2d 23 (1962), the court held that "substantial compliance" with a statute means actual compliance in respect to substance essential to every reasonable objective of the statute. Where performance of a statutory requirement is mandatory, there can be no "substantial compliance" with the statute except in accordance with the particular provisions. *Oda v. Elk Grove etc. School District,* 61 Cal App 2d 551, 555, 143 P2d 490, 492 (1943). "Substantial compliance" means actual compliance in respect to the substance essential to every reasonable objective of the statute. *Coe v. Davidson,* 117 Cal Rptr 630, 633, 43 Cal App 3d 170, 175 (1974).

The purposes of the Local Budget Law have been stated in ORS 294.321, above. Subsection (4) of that section specifically relates to the duty of the taxing district to provide specific methods for obtaining public views in the preparation of fiscal policy. As stated in subsection (6), the Local Budget Law is intended "[t]o enable the public, taxpayers and investors to be apprised of the financial policies and administration of the municipal corporation in which they are interested." Subsection (5) refers to "economy in the expenditure of public funds" (which would be defeated if a supplemental tax roll is required). ORS 294.326 requires compliance of the Local Budget Law under penalty for failure of a freeze on spending and prohibition of a levy.

The failures of the UCPUD, admitted and stipulated in this suit, fatally transgress the statutory requirements

designed to protect the taxpayers and voters in the UCPUD. The apparent failure of members of the UCPUD's board of directors even to read the statutes under which they operated[1] renders it impossible to apply the "substantial compliance" doctrine. Any individual who has become a board member or an officer of a PUD has assumed important responsibilities. He or she is expected to exercise a reasonable standard of care personally and to call the attention of his fellows to potential or actual failures. Each and every one is accountable.

The court finds that the defendant's 1981-1982 tax levy was and is void. Counsel for plaintiffs shall prepare a form of decree for the court's signature pursuant to Tax Court Rule 68.

---

[1] The failures of the UCPUD's board are particularly ironic when it is noted that the Local Budget Law is relatively clear and straightforward and that it imposes special requirements on the Oregon Department of Revenue (and, secondarily on the State Division of Audits) to advise and aid municipal corporations respecting local budgetary procedures. The Department of Revenue publishes a "Budget Manual for Municipal Corporations" (latest edition, March 1982), which is a model of its kind. The department has a small staff of local budget analysts with duty to aid budget officers, easily available by telephone (and the telephone numbers are published in the budget manual).