Argued and submitted October 14, 1999, reversed and remanded with instructions October 3, 2001

## Edward HARLOW,
*Appellant,*

*v.*

## ALLSTATE INSURANCE COMPANY,
an Illinois corporation,
*Respondent.*

### C98-0340CV; A104859

33 P3d 363

Douglas F. Angell argued the cause for appellant. With him on the brief was Hobson, Hobson & Angell.

R. Daniel Lindahl argued the cause for respondent. With him on the brief were Beth Skillern and Bullivant Houser Bailey.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.*

KISTLER, J.

Schuman, J., concurring.

---

* Schuman, J., *vice* Armstrong, J.

### KISTLER, J.

Plaintiff brought this action against defendant Allstate Insurance Company, claiming that Allstate owed him underinsured motorist (UIM) benefits. Plaintiff and Allstate filed cross-motions for summary judgment. The trial court denied plaintiff's motion, granted Allstate's motion, and entered judgment in Allstate's favor. On plaintiff's appeal, we reverse and remand with instructions to enter judgment in plaintiff's favor.

Plaintiff was injured in a work-related automobile accident and sustained at least $100,000 in damages. The tortfeasor's insurer paid plaintiff $30,000. Plaintiff's workers' compensation insurer paid him approximately $25,000 in workers' compensation benefits but recouped approximately $13,000 from the $30,000 that he had received from the tortfeasor's insurer. Together, the two insurers paid plaintiff a net amount of approximately $42,000.

Allstate had issued an insurance policy to plaintiff that provided him with $50,000 of UIM coverage. When plaintiff sought to recover under that policy, Allstate took the position that ORS 742.504(7)(c) permitted it to deduct the total amount that the two other insurers had paid (approximately $55,000) from the UIM benefits that it owed plaintiff. Because Allstate's policy provides only $50,000 in UIM benefits, Allstate concluded that it owed plaintiff nothing. Plaintiff took the position that ORS 742.504(7)(c) permitted Allstate to deduct the net amount that the two insurers had paid him (approximately $42,000) but no more than that. Under plaintiff's view, Allstate owed him approximately $8,000 in UIM benefits. As noted above, the parties filed cross-motions for summary judgment, and the trial court granted Allstate's motion.

■ On appeal, the dispositive issue is whether ORS 742.504(7)(c) authorizes an insurer to deduct the net or the total amount of the proceeds that its insured has received from the UIM benefits it owes.[1] ORS 742.504(7)(c) provides:

---

[1] The parties agree that the relevant contract provisions are functionally identical to the corresponding statutory provisions and that the proper focus is the statute. *See Vega v. Farmers Ins. Co.*, 323 Or 291, 304, 918 P2d 95 (1996).

"Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by:

"(A) All sums paid on account of such bodily injury by or on behalf of the owner or operator of the uninsured vehicle * * *

"(B) The amount paid and the present value of all amounts payable on account of such bodily injury under any workers' compensation law, disability benefits law or any similar law."

The parties advance different interpretations of the phrase "[t]he amount paid * * * under any workers' compensation law." Allstate argues that the phrase "amount paid" refers to the total amount of workers' compensation benefits paid without regard to whether the workers' compensation insurer has recouped any of those benefits. Allstate's interpretation, while textually permissible, is problematic. It permits a UIM insurer to deduct more than the net amount of payments that its insured has received, giving the insurer a windfall at its insured's expense.

Plaintiff offers a different interpretation. He reasons that the legislature used the phrase "amount paid" to refer to the net amount paid. If, for example, a person bought a computer for $3,000 and received a $1,000 manufacturer's rebate, the amount that the person paid for the computer would, in common usage, be $2,000 or the net amount paid. Plaintiff reasons that the phrase "amount paid" should be given that interpretation, which does not produce the counterintuitive result that Allstate's interpretation does.

Although both interpretations are textually permissible,[2] the context supports plaintiff's interpretation. The Supreme Court has explained that the purpose of ORS 742.504(7)(c) is "to prevent double recovery." *Vega v. Farmers Ins. Co.*, 323 Or 291, 301, 918 P2d 95 (1996) (parenthetically explaining the statute's purpose); *see Hanson v. Versarail*

---

[2] Each side's interpretation requires that we qualify the phrase "amount paid." Plaintiff would limit the phrase to the net amount paid while Allstate would expand it to the total amount paid.

*Systems, Inc.*, 175 Or App 92, 97, 28 P3d 626 (2001) (Supreme Court cases constitute context). As *Vega* makes clear, the statute reflects the legislature's policy choice that an insured should not be paid twice for the same loss, and that the amount of money that other entities have paid on account of a plaintiff's injuries should be deducted from the amount of UIM benefits an insurer owes. Conversely, and consistently with that purpose, an insurer should be allowed to deduct only the net amount of those payments. The purpose of the statute is to prevent double recovery, not to provide an insured with anything less than full recovery up to the UIM policy limits. Plaintiff's interpretation achieves that purpose; Allstate's interpretation defeats it.

Although the text and context are consistent with plaintiff's interpretation, they are not dispositive and we look to the legislative history for guidance. What is now ORS 742.504 was first enacted in 1967. *See* Or Laws 1967, ch 482, § 3.[3] As initially enacted, the statute provided for uninsured motorist coverage. *See id.* The parties have not directed us to anything in the legislative history of the 1967 act that addresses whether the legislature intended that the net or the total amount of workers' compensation benefits paid to an insured could be deducted from uninsured motorist benefits, and we are not aware of any history from that act that bears on the issue.

In 1981, the legislature amended the statutes to require that insurers offer their policyholders underinsured as well as uninsured motorist coverage. *See* Or Laws 1981, ch 586, § 1. Tom Bessonette explained the reason for the change:

> "[I]f you bought $100,000 liability limits and $100,000 uninsured motorist, you would have been better off had the guy who hit you and injured you not had any insurance because * * * if he had $15,000, all you could collect would be $15,000, but if he had no insurance, you could have collected up to $100,000 from your own insurance company. So, this bill provides what we now call underinsurance. You can buy your uninsured motorist up to your policy limits. You can also buy underinsurance so that if you do hit and

---

[3] ORS 742.502 *et seq.* was initially codified as part of ORS chapter 743. We refer to the law as it is presently codified.

collide with somebody who has a $15,000 policy and you have a $100,000 injury, that you would then collect $15,000 from the wrongdoer and $85,000 from your own insurance company and you would be made whole. That's basically what this law does."

Tape Recording, Senate Insurance, Banking and Retirement Committee, SB 31, January 23, 1981, Tape 6, Side A. As initially proposed, the 1981 bill did not make underinsured motorist coverage subject to ORS 742.504. Senator Kulongoski, however, proposed amending the bill to provide that underinsured motorist coverage would be subject to that statute. Tape Recording, Senate Insurance, Banking and Retirement Committee, SB 31, January 25, 1981, Tape 113, Side A. The stated purpose of the amendment was to make the arbitration provisions in ORS 742.504 applicable to underinsured motorist claims. *Id.*[4] The legislature enacted the bill, as amended. *See* Or Laws 1981, §§ 2 and 3.

Having examined the text, context, and legislative history of the statute, we conclude that the legislature intended to prevent double recovery by insureds and also to make the insured whole up to the limits of the UIM coverage. Put another way, nothing in the legislative history suggests that, in authorizing an insurer to reduce UIM benefits by the "amount paid" under any workers' compensation laws, the legislature intended to depart from the basic understanding that the insurer would pay the amount of UIM benefits necessary to make the insured whole up to the policy limits. The legislative history of the 1981 amendment leads us to conclude that plaintiff's interpretation of the statute is correct.

Allstate argues, however, that two of our decisions— *Estate of Linda Greenslitt v. Farmers Ins. Co.*, 156 Or App 75, 964 P2d 1129 (1998), *rev dismissed* 331 Or 692 (2001), and

---

[4] In *Vega*, the *amici* argued that Senator Kulongoski's remarks established that only parts of ORS 742.504 apply to UIM coverage. *See* 323 Or at 302-03 n 9. The court rejected that argument, explaining that the text of "ORS 742.502(4) is clear: It refers to ORS 742.504 in its entirety." *Id.* The court thus held that the legislative history provides no reason for saying that the legislature intended for less than all of ORS 742.504 to apply to UIM coverage. *Id.* It does not follow, however, that the legislative history does not provide guidance in determining how specific subsections of ORS 742.504 apply when those subsections are themselves ambiguous.

*Pitchford v. State Farm Mutual Auto. Ins. Co.*, 147 Or App 9, 934 P2d 616 (1997)—point in a different direction. We discuss those decisions briefly and begin with *Pitchford*, on which Allstate primarily relies.[5]

The plaintiff in *Pitchford* was injured in a work-related automobile accident. 147 Or App at 11. He recovered $25,000 from the tortfeasor's insurer, $5,000 from the tortfeasor, $25,000 in UIM benefits from his employer's insurer, and approximately $113,000 in workers' compensation benefits from Aetna. *Id.* The plaintiff then sought to recover UIM benefits from his own insurer, State Farm. He argued that, in calculating the amount State Farm owed him under its policy, State Farm could deduct only the $25,000 that he had recovered from the tortfeasor's insurer. *Id.* The trial court held that State Farm could deduct more than that, but limited the applicable deduction for workers' compensation benefits paid to the amount of the workers' compensation carrier's statutory lien. *Id.* at 13.

There is no suggestion in *Pitchford* that the workers' compensation carrier had recovered any portion of the workers' compensation benefits that it had paid the plaintiff. For all that appears from the opinion, the plaintiff in *Pitchford* received and retained all the benefits paid by the carrier, as well as the sums paid by the tortfeasor, the tortfeasor's insurer, and the employer's insurer. *Pitchford* thus was not a case in which we were required to decide whether only the net benefits that the plaintiff had received should be deducted from the UIM benefits that State Farm owed him.

Consistent with that factual posture, we neither considered nor decided that issue in *Pitchford*. *See* 147 Or App at 16. Rather, as noted above, the trial court had ruled that only the workers' compensation carrier's lien—the amount that the carrier may recover from any proceeds the plaintiff received from a third-party tortfeasor's insurer—should be deducted from the UIM benefits. The basis for the trial

<hr />

[5] Allstate also relies on our decision in *Yokum v. Farmers Ins. Co.*, 117 Or App 546, 844 P2d 937 (1993). Neither the plaintiff nor the insurer, however, relied on ORS 742.504. *See id.* at 549. Rather, the plaintiff based his claim on ORS 742.542, which addresses the relationship between PIP and UIM benefits.

court's ruling is not immediately apparent,[6] and we concluded that "the trial court should have held that the *full amount* of workers' compensation benefits paid to plaintiff by Aetna, $113,383.64, not just Aetna's statutory lien amount, is deductible from UIM policy limits." *Id.* (emphasis in original).

Allstate relies on the phrase "full amount of workers' compensation benefits paid to plaintiff" to argue that the total (not the net) amount of workers' compensation benefits paid should be deducted from UIM benefits. As the sentence quoted above makes clear, however, the issue that we decided in *Pitchford* was whether the full amount of the benefits paid, as opposed to the statutory lien, should be deducted. We did not decide whether the total or the net benefits paid should be deducted. Put another way, the issue in *Pitchford* was whether the insured could receive a double recovery, not whether the insured was entitled to be made whole up to the policy limits.

Plaintiff also relies on our decision in *Estate of Greenslitt*. The decedent in *Estate of Greenslitt* had purchased UIM coverage from Farmers' Insurance Company. 156 Or App at 77. She later died in a work-related automobile accident. *Id.* The decedent's workers' compensation carrier paid benefits to her heirs but not to her beneficiaries. *Id.* When the beneficiaries later sought to recover UIM benefits from Farmers, Farmers reduced the UIM benefits by the amount of all the payments that the workers' compensation carrier had made. As we framed the issue on appeal, the question was whether the amounts paid to the heirs but not the beneficiaries under the UIM policy were "amount[s] paid" within the meaning of ORS 742.504(7)(c)(B). *Id.* at 79-80.

In answering that question, we explained that the words of the statute were "straightforward and clear" and that they permitted Farmers to reduce the UIM benefits by all the payments that the workers' compensation carrier had made. *Estate of Greenslitt*, 156 Or App at 80. That is, we held that the way that the legislature had expressed its policy

---

[6] Neither the opinion nor the briefs offered any rationale for limiting the deduction to the lien. Rather, it appears from the briefs that the trial court had, on its own motion, limited the deduction to the amount of the lien.

against double recovery required that we consider the total amounts that the insurer had paid. We did not decide the issue presented in this case—*i.e.*, whether, if the workers' compensation carrier had recouped some of the payments it had made, the "amount paid" includes the net or the total payments. Rather, we explained that it was not necessary for us to reach that issue to decide the case, and we specifically reserved it. *Id.* at 78 n 1.[7]

■   Even though we expressly declined to decide the issue this case presents, Allstate focuses on language from *Estate of Greenslitt* in which we explained that the statute was unambiguous. It appears to argue that if the language was unambiguous in *Estate of Greenslitt*, it is also unambiguous here. Language, however, may be unambiguous in one context but not another. *Cf. Tirumali v. City of Portland*, 169 Or App 241, 246-47, 7 P3d 761 (2000), *rev den* 331 Or 674 (2001) (the term "grade" was ambiguous when applied to filled surfaces). There was no question in *Estate of Greenslitt* that the workers' compensation carrier had paid all the amounts that Farmers sought to deduct from the UIM benefits, and we held that the language unambiguously led to only one resolution of that issue. As explained above, however, the phrase "amount paid" does not unambiguously resolve whether the total or net amount paid may be deducted, and we decline to read *Estate of Greenslitt* as deciding an issue that we expressly reserved.[8]

---

[7] We noted in *Estate of Greenslitt*:

"On appeal, as below, there is also an issue regarding a workers' compensation lien of $13,500 that was paid from the $50,000 tortfeasor settlement, pursuant to ORS 656.593(1). Although plaintiffs do not dispute the propriety of paying the lien from the settlement, they do argue that the recovery from the tortfeasors should be calculated as only $36,500 instead of $50,000. The UIM obligation then would be $63,500, assuming no other offsets or reductions. Plaintiffs agree that the issue is academic and need not be decided if the offset for other workers' compensation benefits is proper, because that offset exceeds the amount of available UIM benefits, no matter how the $13,500 lien is treated. Because we conclude that the offset for workers' compensation benefits was statutorily required, we do not reach plaintiffs' assignment of error regarding the lien calculation."

156 Or App at 78 n 1.

[8] Contrary to the suggestion in the concurrence, we do not say "that the meaning of words can vary according to the context of the *reader* or the reader's *interpretative* community." 177 Or App at 132 (Schuman, J., concurring) (emphasis in original). Rather, as in *Estate of Greenslitt*, a phrase may have only one possible

Neither *Pitchford* nor *Estate of Greenslitt* provides any reason to depart from our interpretation of the statute based on its text, context, and legislative history. We accordingly hold that Allstate may deduct only the net amount of money that the tortfeasor's insurer and his workers' compensation insurer paid plaintiff. It follows that the trial court should have denied Allstate's motion for summary judgment and granted plaintiff's motion. *See Cochran v. Connell*, 53 Or App 933, 939-40, 632 P2d 1385 (1981).

Reversed and remanded with instructions to enter judgment in plaintiff's favor.

**SCHUMAN, J.,** concurring.

I agree with the majority that the phrase "amount paid" in ORS 742.504(7)(c) could plausibly refer to the net payment that a workers' compensation or disability insurer pays to an insured, that is, the full amount paid minus any amount recouped from the tortfeasor's insurer. I can also join with the majority as it takes the convoluted journey required by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), in order to reach the legislative history, and I agree with the inference the majority draws from that history. In other words, if we were writing on a blank slate, I would not write separately.

But we do not write on a blank slate. The slate contains *Pitchford v. State Farm Mut. Auto. Ins. Co.*, 147 Or App 9, 934 P2d 616, *rev den* 325 Or 621(1997), and *Estate of Linda Greenslitt v. Farmers Ins. Co.*, 156 Or App 75, 964 P2d 1129, *rev allowed* 329 Or 438 (1999), *rev dismissed* 331 Or 692 (2001), and the majority's efforts to distinguish those cases leaves me impressed but unpersuaded. In those cases, this court stated (again under the whip of *PGE*) in the strongest and clearest terms that the words "paid and payable" in the exact section of the exact statute at issue here were absolutely unambiguous. We did not equivocate or look to legislative intention. The majority correctly points out that in

interpretation when applied to one set of facts but not when applied to another. What varies is not the reader but the facts to which the statute must be applied and against which we must interpret the meaning of the words that the legislature used.

*Estate of Greenslitt* and *Pitchford* we did not decide the precise question at issue here. That is true. But we did decide the exact and complete meaning of the words that must be used to decide the question here. In those cases, this court announced in essence that "paid" referred to *gross* payments. Now, the majority announces that the same word in the same statute refers to *net* payments.

To justify this conclusion, the majority asserts that "[l]anguage * * * may be unambiguous in one context but not another." 177 Or App at 130. I respectfully disagree. The meaning of a word varies, of course, depending on *its* context, that is, the other words that surround it, the function or genre of the work in which it appears, the nature of the linguistic community that produced it, the entire cultural complex in which it is embedded. But the theory that the meaning of words can vary according to the context of the *reader* or the reader's *interpretive* community is contrary to bedrock assumptions about the rule of law, in particular that laws apply equally to different people and across different situations.

I would therefore decide this case as the majority does up to the point at which it takes up *Pitchford* and *Estate of Greenslitt.* At that point, I would limit those cases to their own facts and frankly disavow their absolutist definition of "paid."