Argued and submitted August 21, reversed December 27, 2006

Dale L. LILES
and Karen Marie Liles,
*Respondents,*

*v.*

DAMON CORPORATION,
an Indiana corporation,
*Appellant.*

03-3086; A129113

150 P3d 432

William A. Drew argued the cause for appellant. With him on the opening brief was Elliott, Ostrander & Preston, P.C. With him on the reply brief were John D. Ostrander and Elliott, Ostrander & Preston, P.C.

Gary E. Norman argued the cause and filed the brief for respondents.

Before Linder, Presiding Judge, and Brewer, Chief Judge, and Barron, Judge pro tempore.*

BARRON, J. pro tempore.

---

* Barron, J. pro tempore, *vice* Ceniceros, S. J.

## BARRON, J. pro tempore

Defendant manufacturer appeals a judgment granting plaintiffs recovery under Oregon's Lemon Law, ORS 646.315 to 646.375, after a trial to the court. At trial, defendant moved for what was the equivalent of a motion for judgment of dismissal, challenging the sufficiency of the evidence. *See Lieberfreund v. Gregory*, 206 Or App 484, 490 n 5, 136 P3d 1207 (2006). The trial court denied the motion. The sole issue on appeal is whether the trial court correctly determined that plaintiffs gave defendant an opportunity to correct the defects in their motor home, as required by ORS 646.325, before filing their complaint. We reverse.

The facts are straightforward and undisputed. On December 30, 2002, plaintiffs purchased a new motor home manufactured by defendant, which is located in Indiana. From the time that plaintiffs took possession of the motor home, water continuously leaked into it. Plaintiffs took the motor home to the dealer for repair of the leaks on several occasions, but the dealer failed to successfully fix the leaks. Plaintiffs also had several phone conversations with representatives of defendant, including the president of defendant, but again the leaks were not corrected. On December 23, 2003, plaintiffs' attorney mailed a letter to defendant notifying it of the leaks and the failed attempts to correct the leaks. In the letter, plaintiffs asked defendant to replace the vehicle in accordance with ORS 646.335.[1] The letter did not reach defendant until December 29, 2003, and plaintiffs filed their complaint the next day.[2] The trial court entered a judgment in favor of plaintiffs, rejecting defendant's contention that it

---

[1] ORS 646.335 provides, in part:

"(1) If the manufacturer or its agents or authorized dealers are unable to conform the motor vehicle to any applicable manufacturer's express warranty by repairing or correcting any defect or condition that substantially impairs the use, market value or safety of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall:

"(a) Replace the motor vehicle with a new motor vehicle[.]"

[2] Plaintiffs did so because they mistakenly believed that there was a one-year statute of limitations from the date of delivery to bring a claim under the Lemon Law. In fact, under ORS 646.365, plaintiffs had one year beyond whichever of the following periods ends earlier: the period ending on the date on which the mileage reached 12,000 miles or one year following delivery of the vehicle to the consumer.

did not have an opportunity to correct the defect before plaintiffs filed the action.

■      On appeal, defendant renews its argument that, because plaintiffs filed their complaint only one day after defendant received plaintiffs' letter concerning the leaks, plaintiffs did not provide an opportunity for defendant to correct the leaking problem, as required by the plain language of ORS 646.325. In response, plaintiffs make three contentions: (1) the language of the statute does not require that the opportunity to correct a defect must come *after* the consumer gives written notice to the manufacturer; (2) under *Johnson v. Star Machinery Co.*, 270 Or 694, 530 P2d 53 (1974), we should decide that the notice requirement of ORS 646.325(3) is superfluous and a nullity because it conflicts with the clear intent of the legislature to protect the consumer who buys a "lemon"; and (3) under *Brown v. Portland School Dist. #1*, 291 Or 77, 628 P2d 1183 (1981), plaintiffs substantially complied with the notice requirements by taking the vehicle to an authorized dealer for repairs several times and by having several phone conversations with defendant's representatives before the December 23, 2003, letter was sent.

Whether defendant had an opportunity, within the meaning of ORS 646.325(3), to correct the leaking problem presents us with an issue of statutory construction. Under the familiar framework set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), we first look to the text and context of a statute, because the statute's wording "is the best evidence of the legislature's intent." *Id.* at 610. If the legislature's intent is not clear from the text and context inquiry, we then look to the legislative history of the statute. *Id.* at 611-12. We consider the legislative history along with the text and context to determine whether all of those together make the legislative intent clear. *Id.* at 612. If the legislature's intent then becomes clear, our inquiry is at an end. *Id.*

ORS 646.325 provides that three requirements must be met to warrant a remedy of replacement under ORS 646.335:

"(1)   A new motor vehicle does not conform to applicable manufacturer's express warranties;

"(2) The consumer reports each nonconformity to the manufacturer, its agent or its authorized dealer, for the purpose of repair or correction, during the period of one year following the date of original delivery of the motor vehicle to the consumer or during the period ending on the date on which the mileage on the motor vehicle reaches 12,000 miles, whichever period ends earlier; and

"(3) The manufacturer has received direct written notification from or on behalf of the consumer and has had an opportunity to correct the alleged defect. 'Notification' under this subsection includes, but is not limited to, a request by the consumer for an informal dispute settlement procedure under ORS 646.355."

The requirement under subsection (3) that the manufacturer receive "direct written notification" and have an "opportunity to correct" is the requirement at issue here. In particular, we must determine whether an "opportunity to correct" must come after the "direct written notification" is received.

We previously construed ORS 646.325(3) in *Pavel v. Winnebago Industries, Inc.*, 127 Or App 16, 870 P2d 856 (1994), a case that also involved the purchase of a motor home. In *Pavel*, the plaintiffs' motor home was in repair shops for more than 100 days after delivery, but the plaintiffs never gave the defendant any advance written notice under ORS 646.325(3) that a particular defect had to be corrected. The defendant contended that giving a written notice was a condition precedent to filing an action in court. More specifically, the defendant argued that ORS 646.325(3) was unambiguous and that the plaintiffs did not provide the proper "prior written notification and opportunity to correct." *Pavel*, 127 Or App at 19. The plaintiffs, making an argument similar to plaintiffs' argument in this case, asserted that an interpretation of the statute requiring "an opportunity to correct" and "prior written notice" when the alleged nonconformity is based on a series of repairs totaling 30 or more business days is clearly contrary to the remedial purpose of the statute.

We disagreed with the plaintiffs' assertion. Although we did not cite *PGE*, we determined that ORS 646.325(3) was unambiguous under those facts and that the unambiguous language "can be literally applied consistently with the other provisions of the statutory scheme." *Pavel*, 127 Or App at 20.

We rejected the plaintiffs' assumption that the objective of the statute is solely to provide consumers with replacement vehicles or refunds. *Id.* To the contrary, we noted that ORS 646.325(3) also "contemplates an opportunity for the manufacturer to remedy problems with a vehicle." *Id.*

In *Pavel* we did not decide whether the written notice to the manufacturer had to come before the "opportunity to correct the alleged defect." That is the inquiry we must now make by first examining the text of ORS 646.325(3), as required by *PGE*, 317 Or at 610. Although we determined in *Pavel* that the language of ORS 646.325(3) was unambiguous for purposes of the issue presented in that case, the legislature's intent as to the chronological requirements in the statute is less clear. *See Harlow v. Allstate Ins. Co.*, 177 Or App 122, 130, 33 P3d 363 (2001) (a statute can be unambiguous in one context and ambiguous in another). ORS 646.325(3) states that "[t]he manufacturer [must] receive[ ] direct written notification from or on behalf of the consumer and ha[ve] had an opportunity to correct the alleged defect." A plain reading of the text does not clearly indicate that the legislature intended that an opportunity to correct come *after* the written notification because the conjunction "and" only suggests that both requirements must be met before a consumer pursues the extraordinary remedies of the Lemon Law.[3]

As part of our textual analysis, we also look to the context of the statutory language at issue. In looking at the context, we can consider earlier versions of the statute. *SAIF v. Walker*, 330 Or 102, 108-09, 996 P2d 979 (2000). The first version of ORS 646.325 was enacted in 1983. Or Laws 1983, ch 469, § 2. It consisted of subsections (1) and (2) only. After complying with those subsections, a consumer could pursue the remedy allowed under the Lemon Law. Subsection (3) was enacted in 1987 and added a third requirement that must be met before a consumer could pursue a remedy under the Lemon Law. Or Laws 1987, ch 476, § 6. As noted, subsection (2) requires that the buyer report the nonconformity to

---

[3] It is worth noting, however, that a construction of that provision allowing satisfaction of its requirements if an opportunity to correct was presented before written notice was given seems to run contrary to one of the two purposes of the Lemon Law: to give the manufacturer an opportunity to remedy problems with a vehicle.

the manufacturer, its agent, or its authorized dealer for the purpose of repair within one year or 12,000 miles of delivery, whichever occurs earlier. Subsection (3) is directed solely at the manufacturer and requires written notification and an opportunity to cure. We must construe the provisions to "give effect to all." ORS 174.010. It appears that the provisions provide for a natural progression. First, the vehicle does not conform to the warranty; second, the consumer reports—not necessarily in writing—the defect to the manufacturer or dealer; and third, the consumer gives a written notification, with the manufacturer then having a final opportunity to cure the defect.

Our contextual inquiry may also include examining related statutes. *PGE*, 317 Or at 611. Under ORS 646.361, which was enacted at the same time as ORS 646.325(3), the manufacturer, and not the dealer, is solely subject to the extraordinary remedies of the Lemon Law in the event of a successful Lemon Law claim. Specifically, ORS 646.361(1) states that nothing in the Lemon Law statutes "creates a cause of action by a consumer against a vehicle dealer." Subsection (2) of that statute goes on to state that a manufacturer cannot "join a dealer as a party" or "try to collect from a dealer any damages assessed against the manufacturer." Because that statute makes clear that only the manufacturer is subject to the Lemon Law remedies, interpreting ORS 646.325(3) as allowing the manufacturer a final opportunity to correct a defect after it has received written notice from the consumer of that defect would be consistent with the manufacturer's ultimate responsibility. For example, if, as plaintiffs urge, there is no chronological requirement in the statute, a manufacturer who was aware of a defect, but was unaware that it had not been fixed, would still be subject to the Lemon Law without having a final chance to correct the defect. This case illustrates that problem. It appears that the last contact between defendant and plaintiffs occurred when defendant authorized plaintiffs to take the motor home to a repair shop near them. There is no indication that defendant knew that the repair shop failed to correct the leaks. To the contrary, plaintiffs indicated that their next step after leaving the repair shop was to visit an attorney, who then sent the December 23, 2003, letter. As noted, plaintiffs filed their

Lemon Law claim the day after defendant received that letter.

ORS 646.345(4) also sheds some light on whether the legislature intended a chronological requirement in ORS 646.325(3). ORS 646.345(1), which was enacted as one of the original provisions of the Lemon Law, provides that, if the same defect is subject to repair at least four times and is not corrected or the vehicle is out of service for at least 30 business days because of the defect, there is a presumption that a reasonable number of attempts have been undertaken to conform a motor vehicle to the applicable manufacturer's express warranties.[4] Subsection (4) of that statute states, however, that "[i]n no event shall the presumption * * * apply against a manufacturer unless the manufacturer has received prior direct written notification from or on behalf of the consumer and has had an opportunity to cure the defect alleged." In other words, before a consumer can receive the benefit of the presumption, the consumer must first notify the manufacturer directly, *in writing*, about the defect that may require or has required four or more repairs or may keep or has kept the vehicle out of service for more than 30 business days, after which the manufacturer has the opportunity to cure the present defect. *See Pavel*, 127 Or App at 21. That demonstrates that the opportunity to cure follows the written notice under ORS 646.345(4) and is suggestive that the same should be true in relation to ORS 646.325(3) even though the former relates to a presumption, without the benefit of which the consumer could still prevail under the Lemon Law, and the latter to a requirement that must be met to be entitled to a remedy under the Lemon Law. The two provisions are consistent and should be read together.[5]

■   Because the context at most suggests, albeit strongly, that the legislature intended that the manufacturer

---

[4] ORS 646.335(1) provides that, if the manufacturer cannot conform the vehicle to express warranties through repairs or corrections of defects or conditions "after a reasonable number of attempts," it shall replace the vehicle or accept its return and refund the price paid.

[5] Although we did not explicitly state in *Pavel* that ORS 646.325(3) requires written notice before an opportunity to cure, an examination of that opinion suggests that we assumed as much, perhaps because a chronological progression is the more natural reading of the statute. *See* 127 Or App at 21.

have an opportunity to cure after receiving written notice, and because the actual text of ORS 646.325(3) is unclear as to the chronological requirements of the "written notice" and "opportunity to correct," we find it appropriate to examine the legislative history of the provision. As noted, ORS 646.325 was amended in 1987 to include subsection (3). Or Laws 1987, ch 476, § 6. The amendment was introduced in the House of Representatives by Representative George Trahern, who proposed the addition of subsection (3) to "clarif[y] that the manufacturer has at least one last opportunity, if you will, to correct the alleged defect." Tape Recording, House Committee on Consumer and Business Affairs, HB 2599, Mar 24, 1987, Tape 52, Side B (testimony of Rep George Trahern).[6] Representative Trahern's characterization of the statute's requirement to give the manufacturer an opportunity to correct as "one last opportunity" strongly suggests that the legislature intended that the opportunity must come after the written notice. In other words, even though a manufacturer might have had other opportunities to correct a defect, the written notice requirement of ORS 646.325(3) affords it one last chance to correct before the consumer can pursue the extraordinary remedies under ORS 646.335. As illustrated above, to read the statute as plaintiff suggests— that is, that the opportunity to correct does not have to follow the written notice—would not allow a manufacturer, who was aware of the defect, but unaware that it had not been corrected, time to correct the defect and would defeat the purpose of the written notice.

■      Plaintiffs' arguments under *Johnson* and *Brown*, which are pre-*PGE* cases,[7] are variations on their first

---

[6] The views of a single legislator, although entitled to no weight when expressed in relation to laws already enacted, can shed light on a new enactment, *Karjalainen v. Curtis Johnston & Pennywise, Inc.*, 208 Or App 674, 683, 146 P3d 336 (2006), and can be persuasive as to the meaning of a bill, *Baccelleri v. Hyster Co.*, 287 Or 3, 11, 597 P2d 351 (1979). Representative Trahern's comments were made during testimony before a House committee on a new enactment, an amendment to ORS 646.325, and there is nothing in the legislative history to contradict the view he expressed.

[7] The fact that a case predates *PGE* does not mean that its interpretation of the statute is automatically disregarded. *See Bergerson v. Salem-Keizer School District*, 341 Or 401, 414 n 7, 144 P3d 918 (2006). Such cases may be considered where the prior interpretation has become part of the statute, *see S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614, 622, 872 P2d 1 (1994), or where a *PGE*

argument. Citing *Johnson*, 270 Or at 705-06,[8] plaintiffs argue that giving effect to ORS 646.325(3) would defeat the purpose of the statute. Specifically, they deem ORS 646.325(3) as merely duplicative of the requirements of ORS 646.325(1) (the vehicle does not conform to the manufacturer's warranty) and ORS 646.325(2) (the nonconformity is reported to the manufacturer or its authorized dealer for the purpose of repair). Such duplication, according to plaintiffs, means that subsection (3) is superfluous and should be ignored because to follow it would produce a result contrary to the legislative intent to protect the consumer.[9] But, as did the plaintiffs in *Pavel*, plaintiffs disregard the legislative intent to give manufacturers one last opportunity to remedy problems with a vehicle. Plaintiffs may believe that ORS 646.325(3) is superfluous and leads to an absurd result. But when both purposes are considered, as articulated in *Pavel*, the statute is not superfluous, there is no absurdity, and all aspects of the Lemon Law are given effect. Further, we are not permitted to ignore words written by the legislature as plaintiffs argue *Johnson* allows us to do. To the contrary, in construing statutes, we cannot "insert what has been omitted, or * * * omit what has been inserted." ORS 174.010.

■    Plaintiffs' final argument would also require us to ignore the language and the dual purposes of ORS 646.325. Plaintiffs argue that they substantially, and thus satisfactorily, complied with the notice requirements of ORS 646.325 by taking the vehicle to an authorized dealer for repairs several times and by having several phone conversations with

---

analysis confirms the prior interpretation; *see Keller v. SAIF*, 175 Or App 78, 81, 27 P3d 1064 (2001).

    [8] In *Johnson*, the Oregon Supreme Court stated that, "if the literal import of the words [of a statute] is so at variance with the apparent policy of the legislation as a whole as to bring about an unreasonable result, the literal interpretation must give way and the court must look beyond the words of the act." 270 Or at 704.

    [9] Plaintiffs also argue that the committee members before whom Representative Trahern was testifying "weren't paying attention" when subsection (3) was added and that it was only added "in an attempt to make it harder for the consumer to gain the legislatively-intended benefits of the lemon law." We reject both arguments because nothing in the record supports them, and they merely reflect plaintiffs' disagreement with the policy choice made by the legislature. Whether the legislature made a wise or unwise policy decision in that regard is not our place to decide. *See Wheaton v. Kulongoski*, 209 Or App 355, 362, 147 P3d 1163 (2006).

defendant's representatives before they sent a letter to defendant. They contend that *Brown* supports that assertion. In *Brown*, the Supreme Court determined that the plaintiffs' service of a tort claims notice to two public bodies by first-class mail contrary to the Tort Claims Act, which, at the time, required that notice be sent by certified mail under ORS 30.275, was valid despite the technical defect. *Brown*, 291 Or at 82-83. The court stated that "[t]he sufficiency of the notice given must be determined with the object of the statute in mind and technically deficient claims should not be barred where the purpose of the statute is served." *Id.* at 81. *Brown*, however, is inapposite because this case does not involve a mere technical defect. As discussed, the statutory scheme in the Lemon Law has two purposes, one of which is protection of the consumer, and the other of which, as contained in ORS 646.325(3), is to give the manufacturer an opportunity to remedy a defect. The latter purpose was not served by plaintiffs' filing of their complaint one day after defendant received the written notice.

Plaintiffs believe that, given their view of the purpose of the Lemon Law, the notice requirements of ORS 646.325(3) are "met if the manufacturer has been provided the statutorily required opportunity to cure the defect." According to plaintiffs, by orally contacting representatives of defendant[10] and by bringing the motor home to the dealer for repairs, plaintiffs sufficiently notified defendant of the defect, and thus the "goal" of the statute was met. In other words, plaintiffs want us to view ORS 646.325(3) as an actual notice statute. But the legislature did not provide for actual notice when it enacted ORS 646.325(3),[11] and we cannot write an actual notice provision into the statute.[12] *See* ORS

---

[10] The oral communications plaintiffs had with defendant's representatives are irrelevant because the statute requires written notice. *See Johnson v. Swaim*, 209 Or App 341, 345-46, 147 P3d 341 (2006) (oral communications before trial advising defendant of amount of claim in regards to attorney fee request at trial not relevant because statute required amount of claim to be in writing).

[11] The legislature knows how to write an actual notice statute. For example, ORS 30.275 now, as opposed to when *Brown* was decided, allows a tort claims notice to a public body by formal notice (personal service or service by mail), *actual notice*, commencement of an action, or payment of all or part of a claim by the public body involved.

[12] There is some question as to how (or whether) cases like *Johnson* and *Brown*, which were decided before *PGE* and allowed courts to add or subtract words from

174.010; *PGE*, 317 Or at 610. Instead, ORS 646.325(3) sets out requirements that must be met before seeking a remedy under the Lemon Law. As we have noted above, the statute requires plaintiffs to provide written notice to defendant, followed by an opportunity to cure the defects. Plaintiffs did not provide defendant with such an opportunity after their written notice.

Reversed.

---

statutes under some circumstances, fit into the *PGE* framework for construing statutes. According to Judge Landau in his concurring opinion in *Clackamas County v. Gay*, 146 Or App 706, 712, 934 P2d 551 (1997),

"[W]e should discard the notion that courts have the authority to rewrite statutes. To begin with, although the court has not expressly overruled *Johnson* or disavowed its prior decisions in which it rewrote the language of various statutes, those cases implicitly have been superseded by the court's most recent template for construing statutes, described in *PGE*[.]"

Judge Landau repeated his concerns in another concurring opinion in *Young v. State of Oregon*, 161 Or App 32, 40-42, 983 P2d 1044 (1999), where Judge Haselton also produced a concurring opinion disagreeing with Judge Landau's view of the continuing validity of *Johnson*. Judge Haselton wrote:

"With *PGE*, as with any other formula, there must be limits. Legislative draftsmanship is not a science, and neither is statutory construction. When a methodology that purports to effectuate legislative intent inverts that intent, something is seriously wrong. The methodology must be reexamined and modified or discarded.

"* * * If we are to live, sensibly, with *PGE*, the 'absurd results' principle must be available at the so-called 'first level,' not the 'third level,' of the analysis. That is, there must be an escape hatch for those rare circumstances in which any reasonable person would conclude, notwithstanding unambiguous text, that the legislature could not possibly have intended the result that the text ostensibly yields."

161 Or App at 42-43 (footnotes omitted).