IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

BEAVER VENTURES LLC,         )
                                           )
          Plaintiff,          )    TC-MD 240646N
                                           )
     v.                     )
                                         )
WASHINGTON COUNTY ASSESSOR,  )
                                         )
         Defendant.      )   **DECISION**

Plaintiff appealed Defendant's denial of an enterprise zone (EZ) exemption for 2023 investments in property identified as Accounts R2221111, R2217181, and R2223358 (subject property) for the 2024-25 tax year. (Compl at 1.) The parties filed cross motions for summary judgment with stipulated facts and exhibits. An oral argument was held by remote means on September 16, 2025. Michelle DeLappe, an Oregon attorney, appeared on behalf of Plaintiff. Jason Bush, Deputy County Counsel, appeared on behalf of Defendant.

## I.  STATEMENT OF FACTS

The subject property is composed of data centers known as PDX 11 and PDX 12, in the Hillsboro EZ. (Stip Facts at ¶1.[1]) Plaintiff built PDX 11 and PDX 12 over multiple phases beginning in 2018, with the first phase of structures and equipment placed in service in 2020. (*Id.* at ¶2.) Plaintiff received authorization in 2017 for five years of EZ exemption on the initial phase of construction. (*Id.* at ¶3.) It received a second authorization in 2023 for five years on the second phase of construction. (*Id.* at ¶4.) Plaintiff filed EZ claims and property schedules for qualified property in 2021, 2022, 2023, and 2024. (*Id.* at ¶5.)

---

[1] An additional data center, PDX 10, is not at issue in this appeal. (*See* Stip Facts at ¶1 (identifying subject property accounts as included within PDX 11 and PDX 12).)

A.      *Authorizations for Phases 1 and 2*

Phase 1 was authorized in 2017, describing the investment as "the initial phase (Phase 1) of a multi-phase data center project where we plan to construct an approx. 180,000 SF data center * * *." (Stip Ex A at 4.) Phase 1 corresponds to the PDX 11 site. (Def's Mot for Summ J at 2.) Phase 2 was authorized in 2023, describing the investment as follows:

> "PDX12 will be a new data center containing 8 data suites. These suites will be occupied by multiple tenants. The total square footage of the PDX12 building will be 550,000 sqft. * * * Suites will begin to come online in Q1-2023, with all suites anticipated to be fully occupied by Q4-2024."

(Stip Ex B at 6, 10.) Phase 2 corresponds to the PDX 12 site. (Def's Mot for Summ J at 2.)

Plaintiff's parent company[2] and the City of Hillsboro (the City) entered an EZ contract for Phase 2 on November 8, 2022, reflecting the five-year tax exemption period, from 2024 to 2028. (Stip Ex B at 14, 15.) The City agreed to "work with the [parent] for the duration of the Tax Exemption period in order to foster the success of all parties in this undertaking and all obligations of this agreement." (*Id.* at 15.) It further agreed to "coordinate all parties necessary to achieve property tax exemption on the [parent's] Project for an exemption estimated to commence in calendar year 2024 continuing through calendar year 2028, provided that the [parent] discharges it obligations under this Contract." (*Id.*)

A pre-authorization conference for Phase 2 was held December 1, 2022. (Stip Facts at ¶6.) Those in attendance included representatives from Plaintiff's parent, Valerie Okada (Okada) from the City of Hillsboro, and Neil Simon from Defendant's office, who "reviewed the annual compliance forms and [stated] that the annual forms need to be submitted for both enterprise zone applications." (Stip Ex B at 13.)

---

[2] Plaintiff is wholly owned by Digital Realty Trust, L.P. (Stip Facts at ¶1.)

B.     *2024 EZ Exemption Claim*

On February 13, 2024, Defendant's appraiser sent Plaintiff's parent an email reminder to file EZ forms.  (Stip Ex F at 1.)  It said: "Please submit only ONE EZ Claim Form/Property Schedule/EZ-CIP paperwork per Authorization at a time."  (*Id.*)  Plaintiff's parent confirmed receipt of the email.  (*Id.*)  On April 1, 2024, Plaintiff's parent filed a 2024 EZ claim and attached a property schedule listing qualified property in both PDX 11 and PDX 12.  (Stip Facts at ¶8; Stip Ex C at 1; Stip Ex D.)  The 2024 claim referenced the authorization approved in 2017.  (Stip Ex C at 1.)  The claim form was checked "no" for first property schedule filed for this authorization and listed prior exemptions in 2021, 2022, and 2023.  (*Id.*)

The 2024 claim form that Plaintiff used included the following instructions:

"For first or second filing after initial filing, attach a property schedule only for **additional** new qualified property subject to same authorization[.]"

"Separate claims are required for exemptions subject to different authorizations, including, but not limited to, different investment sites within the same enterprise zone."

(Stip Ex C at 1 (emphasis in original).)

On April 17, 2024, Okada emailed Josh Jenks (Jenks), Plaintiff's compliance specialist:

"I noticed that an exemption claim form for the 2nd application was not submitted.  Were you aware that [Plaintiff's parent] has two enterprise zone applications?  A claim form needs to be submitted for each application.  Please correct/update the submitted claim form for Application 1 and please send another claim form with Application 2 information.  App 2 claim form should coincide with the property schedule you submitted."

(Stip Ex G at 2.)  Jenks responded that he had "the updated form for [Plaintiff's] EZ App 2" and asked to run them by Okada "to confirm they are sufficient * * *."  (*Id.* at 1.)  Jenks then prepared a second exemption claim form for the 2023 Authorization, but "wanted to check with

/ / /

Ms. Okada about the need to file it given [his] prior submission had included all the property that [Plaintiff] had placed into service in 2023." (Decl of Jenks, ¶8-9.)

Jenks and Okada spoke by phone on May 1, 2024. (Stip Facts at ¶9.) Okada did not recall Jenks "bringing up the issue of whether a claim form was needed per each authorization * * *." (Decl of Okada at ¶8.) Rather, he asked questions about employment levels. (*Id.*) Based on that meeting, Jenks concluded that his original claim form was "sufficient and that no further action was needed[,]" and so he did not file a second claim form in 2024. (Decl of Jenks at ¶12, 16.)

On September 9, 2024, Defendant sent Plaintiff a letter denying its EZ claim for the 2024-25 tax year for property listed on the 2024 Property Schedule. The letter explained the EZ claim was "beyond the allowed three consecutive investments per approved Phase 1 application, and no 2024 [EZ claim] was filed per approved Phase 2 application; therefore, all 2023 calendar year investments are not eligible." (Stip Ex H at 1.) Defendant denied exemption for "all phase two property" and assessed $3,415,744 in additional taxes. (Def's Mot for Summ J at 4; Stip Facts at ¶12.)

## II. ANALYSIS

The ultimate issue before the court is whether Plaintiff's 2023 investments in the subject property are entitled to EZ exemption for the 2024-25 tax year. Plaintiff concedes that it did not file separate EZ claim forms in 2024 for each of its two EZ authorization applications, 2017 and 2023. Plaintiff argues that the 2023 property investments should nevertheless receive exemption because Plaintiff substantially complied with the statutory requirement to file a 2024 EZ claim for property invested pursuant to its 2023 authorization. Plaintiff also argues that it lacked actual knowledge that its claim would be denied because neither the City nor Defendant clearly and

directly communicated that to Plaintiff.  (*See* Ptf's Mot for Summ J at 10; Ptf's Reply at 4-5.)
The court will grant summary judgment when there are no genuine issues of material fact, and
the moving party is entitled to judgment as a matter of law.  *See* Tax Court Rule – Magistrate
Division (TCR-MD) 13 B, applying Tax Court Rule (TCR) 47 C.

The court begins with an overview of pertinent provisions from the Oregon EZ Act, with
a focus on the purpose of the act and the requirement to file an annual claim form.  The court
next considers whether the "substantial compliance" doctrine applies in the context of EZ
exemption and whether the failure to file an EZ claim form is correctible on appeal.  Finally, the
court considers Plaintiff's argument that neither the City nor Defendant adequately
communicated to Plaintiff the consequences of failing to file a second claim form.

A.      *Enterprise Zone Act Generally and Annual Claim Requirement*

"The Oregon Enterprise Zone Act provides temporary exemption from property taxation
for 'qualified' business firms that invest in 'qualified' property and increase their employment
within any of numerous enterprise zones located throughout the state."  *United Streetcar v. Dept.
of Rev.*, 23 OTR 418, 419 (2019).  A firm seeking exemption must first "apply for authorization
with the zone sponsor before commencing construction or hiring employees."  *Id.* at 420, *citing*
ORS 285C.140(1).[3]  The application for authorization must include details about "the proposed
operations within the zone" and "the estimated value of the proposed qualified property, among
other data * * *."  *Id.*  The basic exemption is for three years, but a firm may enter into an
agreement with the zone sponsor for a five-year exemption.  *Id.* at 421.

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2023.  The court in *United Streetcar*
cited to the 2015 edition of the ORS, noting that no relevant changes were made for the property tax years 2010-11
through 2016-17.  The EZ statutes were amended in 2017 to make technical corrections and clarifications.  *See* 2017
HB 2833; Or Laws 2017 c 83.

A qualified firm may file its first exemption claim between January 1 and April 1 in the assessment year after qualified property is placed in service. *See United Streetcar*, 23 OTR at 422; ORS 285C.220(1)(a). The claim must be made on "a form prescribed by the Department of Revenue" and filed with the county assessor. ORS 285C.220(1)(b). The claim must include a statement of "[t]he date the application for authorization was submitted and approved * * *." ORS 285C.220(2)(a)(B). "For the first tax year for which qualified property is exempt" the claim "must include a property schedule listing the qualified property." ORS 285C.225(2); *see also* ORS 285C.220(2)(e) (stating claim must include required attachments in ORS 285C.225). If there are concurrent exemptions on qualified property covered by two or more applications – even for the same location – the firm must file *separate* exemption claims and property schedules corresponding to each application and the associated property. *See* OAR 123-674-3500(3).[4] If the firm misses the ordinary filing deadline of April 1, a claim accompanied by a late fee may be filed on or before June 1. ORS 285C.220(7).[5]

The assessor must grant the exemption if statutory requirements are satisfied. ORS 285C.220(4).[6] If the assessor denies the exemption, it must notify the firm in writing. ORS 285C.175(6). "If a business firm fails to timely file an exemption claim under ORS 285C.220[,] * * * [t]he assessor may deny the exemption under ORS 285C.175 for the current tax year * * *." ORS 285C.230(3)(b). The assessor "shall make reasonable and timely efforts to notify an

---

[4] Oregon Administrative Rule (OAR) 123-674-3500(3) states: "In the event of concurrent exemptions under ORS 285C.175 on qualified property covered by two or more Applications even for the same location, the authorized business firm shall file separate exemption claims and property schedules, as described in OAR 123-674-6100 and 123-674-6200, corresponding to each Application and associated qualified property * * *."

[5] ORS 285C.220(8) provides an additional late filing deadline of August 31 of the assessment year, but it does not apply to a claim that includes qualified property required to reported on a property schedule.

[6] Specifically, the assessor must grant the application if the requirements of ORS 285C.175 are satisfied. That statute requires, among other things, that both the firm and the property are qualified. ORS 285C.175(1).

authorized business firm that is seeking or receiving an exemption under ORS 285C.175 of the filing requirements under ORS 285C.220," but the assessor is "not under any obligation other than as otherwise provided in [the EZ Act] to seek or receive information about the continued entitlement of property to an exemption under ORS 285C.175." ORS 285C.230(6).

In 2024, Plaintiff filed a single EZ claim form, identifying the relevant authorization as 2017, and attaching a property schedule that included new investments made pursuant to the 2023 authorization. As set forth above, Plaintiff was required to submit two EZ claim forms in 2024, one corresponding to the 2017 authorization and the second corresponding to the 2023 authorization. Although Plaintiff's 2024 claim did not strictly comply with filing requirements, Plaintiff argues that its "combined" claim and property schedule substantially complied.

B.    *Substantial Compliance*

Plaintiff argues it substantially complied with the EZ claim filing requirements in 2024 because it provided all the "substantive information" on its single claim form and schedule, and neither the City nor Defendant was confused that the property schedule reported property pertaining to the 2023 authorization. (Ptf's Mot for Summ J at 9-10.) Defendant responds that the substantial compliance standard has not been applied in tax exemption cases, including for EZ exemptions. (Def's Resp at 2.) Even if the standard applies, Defendant asserts that Plaintiff failed to meet it. (*Id.* at 3.)

1.    *Does substantial compliance standard apply to EZ exemption claims?*

Substantial compliance does not appear in the EZ statutes or general exemption statutes, and the court is not aware of prior application of the standard in either context. By contrast, substantial compliance is expressly referenced in other statutory schemes. *See, e.g.*, *Rogers v. Roberts*, 300 Or 687, 717 P2d 620 (1986) (applying ORS 250.084(4) (1985) and finding ballot

title must be in "substantial compliance" with statutory requirements); *Gugler v. Baker County Educ. Serv. Dist.*, 305 Or 548, 754 P2d 891 (1988) (applying ORS 294.485(3) (1983) and finding district required to prepare tax levy in "substantial compliance" with local budget law and other applicable law). Despite a lack of express reference, Oregon courts have applied the standard in the context of notice provisions for the Oregon Tort Claims Act, generally to excuse a claimant's mailing or service mistakes when actual notice was received by the public body.[7] The Oregon Supreme Court considered but declined to apply a substantial compliance standard to a wiretap order even though a majority of federal cases approved the standard. *State v. Pottle,* 296 Or 274, 677 P2d 1 (1984). The court found strict compliance necessary due to "the inherent dangers of abuse in the wiretap process[.]" *Id.* at 287.

Even where a substantial compliance standard is expressly stated in the statute, courts have warned of the dangers associated with its application. The primary danger concerns the separation of powers between the branches of government. *Dept. of Rev. v. Umatilla County*, 10 OTR 309, 311-12 (1986) (so stating). The court's role is to interpret and apply the law, not write it, and "substantial compliance in effect says that some parts of a statute are not important." *Id.* at 311; *see also Brown v. Portland School Dist. No. 1,* 291 Or 77, 91-92, 628 P2d 1183 (1981) (Justice Peterson dissented from the majority, which he characterized as ignoring the unambiguous language of the statute and legislating a different result); *see also* ORS 174.010 ("[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what

---

[7] In *Brown v. Portland School Dist. No. 1,* 291 Or 77, 628 P2d 1183 (1981), the claimant sent notice by first class mail whereas the statute required certified mail. In *Webb v. Highway Division,* 293 Or 645, 652 P2d 783 (1982), the claimant's lawyer sent notice by regular mail to a Department of Justice employee who had authority to investigate tort claims and make settlements, whereas the statute required either personal notice on the attorney general or certified mail, return receipt requested. In both bases, the correct public body received the claim and investigated. But in *Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1361 (1980), the court declined to find substantial compliance where notice was given orally to the incorrect public body.

is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted"). A secondary danger is "the absence of clear limits on its application." *Umatilla County*, 10 OTR at 312.

It is doubtful that the substantial compliance standard applies in the exemption context, including EZ exemptions. It has long been held that "[t]axation is the rule, and exemption from taxation is the exception." *Corporation of Sisters of Mercy v. Lane County*, 123 Or 144, 152, 261 P 694 (1927). Tax exemption statutes are "strictly construed in favor of the state and against the taxpayer." *Multnomah School of the Bible v. Multnomah County*, 218 Or 19, 27, 343 P2d 893 (1959). The EZ exemption statutes contain specific claim requirements and deadlines tied to the annual property tax cycle, with limited opportunities for late filing. Considering the lack of express statutory reference together with the court's concerns about substantial compliance, the sufficiency of such compliance to satisfy EZ exemption requirements is dubious at best.

2. *Is Plaintiff's failure to file a second EZ claim correctible on appeal?*

Even though the court declines to adopt a "substantial compliance" standard for EZ claim requirements, the court does not conclude that a claim form must be perfect in every respect. The court retains its traditional role of interpreting statutory requirements and deciding if they are satisfied by the evidence presented.[8] As part of its *de novo* review of a claim denial, the court may consider evidence beyond that contained in the claim form. ORS 305.425(1). A few cases are illustrative of the court's role in evaluating taxpayers' compliance with the EZ claim and other exemption requirements.

/ / /

---

[8] *See, e.g., Modoc Lumber Co. v. EBI Companies*, 295 Or 598, 601-602, 668 P2d 1225 (1983) (declining to apply substantial compliance standard where statute stated filing requirements were "jurisdictional" but providing relief because "the precise legal requirements of compliance [were] sufficiently uncertain" absent rulemaking).

DECISION  TC-MD 240646N                                                                                    9

In *United Streetcar*, the taxpayer timely filed an EZ claim form but reported zero employees, causing the county assessor to deny the claim and disqualify the property from EZ exemption. TC-MD 160326N, 2017 WL 5665340 at *2 (Or Tax M Div, Nov 27, 2017). On appeal, taxpayer alleged that it, in fact, had the minimum number of employees to qualify for exemption and the case proceeded to trial on that issue. *Id.* at *4; *see also United Streetcar*, 23 OTR at 438-439 (clarifying the legal standards for which employees count towards the minimum requirement). *United Streetcar* demonstrates that a taxpayer is not strictly bound by what it reported on its claim form but may present additional evidence as part of its *de novo* appeal.

In *EdgeConnex, Inc. v. Washington County Assessor*, the taxpayer filed an EZ claim and attached a property schedule reporting new investment of qualified property. TC-MD 200410N, 2022 WL 1403679 at *1 (Or Tax M Div, May 4, 2022). The county found taxpayer's property schedule to lack sufficient detail and granted a partial exemption for less than half of the amount claimed by the taxpayer. *Id.* at *2.[9] The county described taxpayer's property schedule as "summary reporting" and sought to limit taxpayer's presentation of additional evidence on appeal, arguing that it would undermine the late filing deadline of June 1. *Id.* at *4. The court declined to impose Defendant's requested limitation, finding that taxpayer complied with the statutory requirements to file an EZ claim and property schedule. *Id.* at *5. The court concluded taxpayer was permitted to present additional evidence on *de novo* review. *Id.* at *6.

Here, Plaintiff characterizes its single claim form and property schedule as a "combined" claim form. Defendant disagrees, arguing that Plaintiff simply failed to file a second claim form for the 2023 authorization. (Def's Resp at 9.) On this point, the court agrees with Defendant.

---

[9] Some of the confusion stemmed from differences between taxpayer's EZ property schedule and its real and personal property tax returns. *Id.* at *1-2. The county corresponded with taxpayer to seek additional clarity. *Id.*

The impact of failing to file a claim form differs from timely filing a claim form with vague or even mistaken information. The difference stems from the existence of a clear directive to file a claim on a specified form and within a specified time, and the consequence for failing to do so.

The legislature charged the Department of Revenue with adopting rules necessary to administer the EZ Act, including the requirement to file an exemption claim. ORS 285C.125(1). The legislature required the exemption claim to be made on a form prescribed by the department. ORS 285C.220(1)(b). The department promulgated a rule requiring separate claim forms for separate authorizations and clearly stated that requirement in its form instructions. Defendant offers a credible reason for the requirement: allowing assessors to track property investments and exemption periods in a complex exemption program. (Def's Mot for Summ J at 9.) The legislature prescribed consequences when a firm fails to timely file a claim form; specifically, the assessor may deny the exemption for the current tax year. ORS 285C.230(3)(b). The court cannot waive or set aside the rule and form adopted by the department and as contemplated by statute. Nor can the court permit Plaintiff to correct its failure to file a claim on appeal because ORS 285C.220 establishes claim filing deadlines. Further, ORS 285C.230(3)(b) permits Defendant to deny exemption as a consequence for failure to timely file a claim. Plaintiff did not comply with the requirement to timely file an exemption claim for its 2023 authorization.

In its remaining arguments, Plaintiff asserts that its failure to file a second claim form should be excused based on the City and Defendant's inadequate communications. The court next addresses those arguments.

C.      *Plaintiff's Additional Arguments on Lack of Adequate Communication*

Plaintiff argues that both the City and Defendant failed to directly communicate to Plaintiff that its 2024 exemption would be denied if it did not file two separate claim forms.

Plaintiff argues that the City failed in its contractual duty to coordinate all parties to achieve property tax exemption for the duration of the exemption period. (Ptf's Mot for Summ J at 10.) Specifically, the City did not put Plaintiff's compliance specialist on "clear notice" that the claim form was "not in compliance and what the consequences of that would be." (*Id.* at 11.) Further, the City did not contact Plaintiff directly about the issue until the time to remedy had passed. (*Id.*) Defendant notes that the City (the zone sponsor) is not a party to this case. (*See* Def's Resp at 2.) To the extent Plaintiff has a claim against the City, Defendant argues it is outside the scope of this appeal. (*Id.*) The court agrees and declines to consider claims against the City.

Plaintiff also argues that Defendant could very easily have notified Plaintiff that a second claim form was required, rather than waiting for all opportunities for correction to pass. (Ptf's Resp at 5-6.) Defendant disputes that it had a statutory or other obligation to ensure Plaintiff was "fully informed when documents are not filed correctly" or to communicate directly when Plaintiff uses a "third-party consultant/tax representative." (Def's Resp at 3-4.)

Taxpayers are presumed to know the law, and ignorance of the law does not excuse a failure to act. *See, e.g., Performance Processing Group v. Lane County Assessor,* TC-MD 021214C, 2003 WL 215371 (Or Tax M Div, Jan 24, 2003) and *Village Phase I v. Clackamas County Assessor*, TC-MD 031136C, 2004 WL 378387 (Or Tax M Div, Feb 27, 2004) (both so holding). The EZ Act provides affirmative duties for both participating business firms and county assessors. The assessor is obliged to make "reasonable and timely efforts to notify" the firm of claim filing requirements but is not otherwise required to seek out information from the firm. *See* ORS 285C.230(6). Here, Defendant sent Plaintiff's parent a reminder in February 2024 of the claim filing deadline and the requirement to submit one claim per authorization, thus

satisfying its obligation.[10]

After Plaintiff filed a single EZ claim, the City's representative gave Plaintiff's compliance specialist an unambiguous reminder that an exemption claim form for the second authorization application was required but had not been submitted. That reminder was sent by email on April 17, 2024, well within the timeframe for Plaintiff to cure the lack of an exemption claim form for the 2023 authorization before the June 1, 2024, deadline. It is unclear why a further reminder from Defendant would have achieved a different outcome. In any event, the statute does not require the level of assistance that Plaintiff requests. Any failure of Defendant to explicitly tell Plaintiff that failure to file a second form would result in a denial is not a dereliction of Defendant's responsibilities, but rather a failure to provide what Plaintiff believed to be a common courtesy. Although Plaintiff is correct that Defendant could have notified it that a second claim form was necessary *after* Plaintiff filed a single claim form, it was not required to do so.[11] Plaintiff's additional arguments based on allegations of Defendant's inadequate communication are unavailing.

## III. CONCLUSION

Plaintiff failed to file a 2024 EZ claim for property invested pursuant to its 2023 authorization application. As a result, the 2023 investments in the subject property are not entitled to EZ exemption for the 2024-25 tax year. Now, therefore,

---

[10] Plaintiff's argument that Defendant should have communicated directly to Plaintiff is not well taken. Plaintiff's 2023 authorization, the EZ contract, and the 2024 claim form each listed Plaintiff's parent as the business.

[11] When a business firm fails to timely file an exemption claim under ORS 285C.220, the county assessor "may use the authority granted to the assessor under ORS 285C.235[.]" That authority is to "demand reports" from owners or lessees of qualified property concerning the use of the property and the employment status of the firm. ORS 285C.235(1). Those statutes support Plaintiff's argument that Defendant *could have* requested an additional claim from Plaintiff. Yet, as discussed above, ORS 285C.230(3)(b) also permits the assessor to deny the exemption based on a firm's failure to timely file a claim. Both options use the word "may" and are separated by the word "or" indicating they are permissive rather than mandatory.

IT IS THE DECISION OF THIS COURT that Defendant's Cross Motion for Summary Judgment is granted, and Plaintiff's Cross Motion for Summary Judgment is denied.

_____

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.***

***This Decision was signed by Presiding Magistrate Allison R. Boomer and entered on January 27, 2026.***